178      SUPREME COURT      [Vol.

[Alford v. The State, ex rel. Attorney General.]

# Alford *v.* The State, *ex rel.* Attorney General.

## *Mandamus.*

(Decided Dec. 2, 1910. Rehearing denied Jan. 12, 1911.
54 South. 213.)

1. *Jury; Right of Trial By; Statute.*—General Acts 1909, p. 63, is not violative of sections 6, 9, 11, or 36 of the Constitution of 1901, since the provisions of section 32 does not deprive one of the right to trial by a common law jury, although it directs a trial in the first instance to be had by the court without a jury, as it secures the defendant an apepal to a court having common law juries, and a right to trial by such jury. The fact that a bond is required for his appearance does not alter the conditions, as it is optional with the defendant whether he gives bond or remains in jail; a thing he would have to do on the demand for a jury when charged with crime.

2. *Same; Federal Constitutions; Applicability to State Statute.*—The provisions of the Federal Constitution guaranteeing the right of trial by jury does not apply to trials in the state courts under state constitutions and statutes.

3. *Constitutional Law; Federal Constitution; Grant of Power.*—The Federal Constitution is a grant of power and Congress can do only what the Constitution expressly, or by reasonable implication, authorizes.

4. *Same; Legislative Power.*—The legislature of the state possesses all legislative power not inhibited by state or federal constitutions, and since the Constitution does not prohibit the legislature from providing for a trial without a jury, provided that right can be had at some other time or place and there is an unconditional right of appeal to a common law jury, a statute which gives such right of appeal preserves the right of trial by jury.

5. *Courts; Decisions Controlling; Federal Decisions.*—The state courts will follow the decisions of the Federal Supreme Court on Federal questions; but as to other questions, they are not bound thereby when contrary to the great weight of authority or to logic and reasoning.

(Mayfield, Sayre and Evans, JJ., dissent.)

· APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

Mandamus by the State on the relation of the Attorney General against J. E. Alford, Judge, to require him

to restore certain cases to his docket which had been transferred by his order to the city court and to require him to proceed to try such cases without a jury. From a judgment granting the writ respondent appeals. Affirmed.

The facts are sufficiently set out in the opinion of the court. The Fuller bill will be found in Gen. & Loc. Acts Sp. Sess. 1909, p. 63. Section 32 will be found on page 92, and is as follows: "That all prosecutions for a violation of any provision of this act, or of any other act for the suppression of the evils of intemperance, including all prosecutions for violation of the statute, approved August 9, 1909, and which in general terms is for identification referred to as an act to promote temperance and to suppress the evils of intemperance, and to prohibit the manufacture, sale, offering for sale, keeping or having for sale or otherwise disposing of prohibited liquors and beverages and keeping unlawful drinking places may be begun by affidavit as well as by indictment and that when begun by affidavit the person charged shall not have the right to demand that a grand jury shall prefer an indictment for the alleged offense, but the prosecution may continue no matter in what court or before what judge the trial shall be had upon the affidavit upon which it was originally begun, and the said affidavit or any complaint that may be filed in such prosecution may be amended to meet the end of justice and to prevent a dismissal of the case upon any informality, irregularity or technicality. If the prosecution is begun in a court in which jury trials are provided for, the defendant may at the time he gives bond within five days thereafter file in the cause a demand for trial by jury, or if he does not give bond he may within five days after his arrest file in the court a demand for a jury trial, in which event

such jury trial shall be allowed. If the prosecution is begun before a court or judge as to which or whom no provision is made for a jury trial, the court or judge if it or he has jurisdiction to try the case and to find a party charged guilty or not guilty, shall proceed with the trial, and if the party charged is convicted, he may appeal to the circuit court or other court of record of like jurisdiction in the county, having jurisdiction in cases of appeal from the county court or from a judgment of a justice of the peace in such form and in such manner and subject to such restrictions as govern appeals under the Code of Alabama from such justices of the peace or county court, and the party may demand and be entitled to a jury trial in such higher court under the same terms and conditions that jury trials are obtainable in cases of appeals from such justices of the peace or county court to said circuit court or other court of like jurisdiction; but this section shall not alter the practice in respect to any preliminary proceeding, authorized by law before a justice of the peace. Nor is it intended hereby to take away from the circuit court of any county any exclusive jurisdiction it may have to try cases against and to punish violators of prohibitory liquor laws, and any circuit court that may have exclusive jurisdiction by any law applicable to the county to try cases against and to punish violators of prohibitory or other anti-liquor laws shall continue to have such exclusive jurisdiction of violations of this act or of the act approved August 9, 1909, hereinabove referred to and of all other laws of this state for the suppression of intemperance and the promotion of temperance."

WEBB, McALPINE & BOWN, COLEMAN, DENT & WEIL, and PHILLIP H. STERN, for appellant. The first contention is that having gone into the trial of these cases

[Alford v. The State, ex rel. Attorney General.]

each prisoner was in jeopardy, and if the judge had no right to bind him over to the city court, then defendants have been acquitted and cannot be tried again.—*State v. Blevin,* 134 Ala. 213. The next question insisted upon is that the governor was without authority to call the extra session as there was no extraordinary occasion for it, but counsel cite no authority in support of this contention. The next contention is that section 32 of said act of 1909, p. 63 is violative of sections 1, 11 and 36, of the Constitution of 1901, in that the defendant is denied the right of trial by jury, since to require a defendant to be first convicted in the lower court before he can secure a jury trial, is an encroachment on this right.—*In re Dana,* 7 Ben. 1; *Callen v. Wilson,* 127 Ala. 540; *State v. Gerry,* 37 L. R. A. 228; *Miller v. Commonwealth,* 15 L. R. A. 441. They further contend that the law was not constitutionally enacted, because of the failure of the legislative journal to comply with certain constitutional requirements.— *Jefferson Co. v. Crow,* 141 Ala. 126; *Coleman v. Town of Eutaw,* 47 So. Rep. 703; *Walker v. City Council,* 139 Ala. 468; *Perry County v. Railroad Co.,* 58 Ala. 546; *Walker v. Griffith,* 60 Ala. 361; *State v. Buckley,* 54 Ala. 599. A provision in the Constitution requiring the journals to show signature of all bills by the presiding officer of each house is mandatory.—*State v. Skeggs,* 46 So. Rep. 268; *Robertson v. State,* 130 Ala. 164; *Hunt v. State,* 22 Texas App. 396; *State v. Kisewetter,* 45 Ohio St. 254; *In re Quaere, etc., of Election Contest,* 31 Neb. 262. The reason for the constitutional requirement of signing of bills by the presiding officer of each house and for fact of such signing to be shown by the journals is to give authenticity to bills.— *Walker v. Griffith,* 60 Ala. 361 at 365; *State v. Kisewetter,* 45 Ohio St. 254; *In re Quaere, etc., of Election*

*Contest,* 31 Neb. 262. When the Constitution requires a fact to be shown by the journals of the legislature, the journals must affirmatively show such fact, and if silent, the fact in legal contemplation does not exist. Its want cannot be supplied by intendment or presumption.—*State v. Buckley,* 54 Ala. 599; *Walker v. Griffith,* 60 Ala. 361. If the fact is not shown with certainty it is not shown at all. If there is only a probability, even in the highest degree, that the requirement has been complied with, it has not been complied with.—*Jefferson Co. v. Crow,* 141 Ala. 126.

ALEXANDER M. GARBER, Attorney General, and THOMAS W. MARTIN, Assistant Attorney General, and NICHOLAS E. STALLWORTH, Solicitor, for the State. Mandamus is the proper remedy.—*Ex parte Campbell,* 130 Ala. 196; *Benners v. The State,* 124 Ala. 97. A judge may be compelled by a mandamus to try these cases.—*Benners v. The State, supra; State ex rel. Wood,* 151 Ala. 574; *Ex parte O'Neal,* 154 Ala. 237. The defendants were never in jeopardy.—*Scott v. The State,* 110 Ala. 48; *Grogan's Case,* 44 Ala. 9. The matter of calling an extra session was committed to the discretion of the governor, and his actions cannot be controlled.—*Higdon v. Jelks,* 138 Ala.; 8 Cyc. 852. The Constitution was complied with and the court was not concerned with what the proclamation contained.—*State v. Skeggs,* 154 Ala. 250. The title of both the Carmichael and Fuller Bills comply with the constitutional requirement.—*Glasscock v. The State,* 48 So. 700. The bills were not local.—*State v. Pitts,* 49 So. 441. That section 32 of the act in question was constitutional, counsel cite the opinion of the lower court which is based on the following authorities: *Connelly v. The State,* 60 Ala. 89; *Collins v. The State,* 88 Ala. 214;

*Reeves v. The State,* 96 Ala. 33; 14 Minn. 439; 8 Gray 329; 17 Md. 331; 4 Conn. 537; 27 W. Va. 205; 12 Kan. 622; 13 Ore. 538; 22 Tex. App. 117; 42 Pa. 89; 13 S. & R. 405; 25 Conn. 278; 108 Miss. 5; 3 A. & E. Enc. of Law, 731; Bishop's Stat. Cr. Sec. 89.

MAYFIELD, J.—This appeal is to test the propriety of the issuance of a mandamus from the Mobile city court to the judge of the inferior criminal court of Mobile, commanding him to reinstate on the trial docket of his court 14 criminal cases, against as many defendants, for violations of the state prohibition laws; and directing him, as judge of said court, to proceed in the hearing of such cases until a final judgment in each is rendered in the inferior criminal court of Mobile county. The prosecution in each of the cases was instituted by affidavit and warrant from that court, made returnable thereto. Before the day set for the trial of these cases, each of the defendants filed a written demand, in the court, for a jury trial, and after argument by counsel, the court decided that the defendants were entitled to a jury trial under the laws of this state, and bound them over to the city court of Mobile for such jury trial; there being no provision for a jury trial in such inferior court, and the city court being the proper court for jury trials, in that county, in criminal cases. This action of the inferior court was resisted by the state's counsel, on the ground that section 32 of the act of the Legislature known as the "Fuller bill" (Gen. & Loc. Acts Sp. Sess. 1909, p. 92) required the court to proceed with the trials to a final judgment; and that if the defendants were convicted they could then appeal to the city court and there obtain a jury trial. This contention was sustained by the city court; hence the mandamus and this appeal.

. No objection is made as to the propriety or validity of the mandamus other than the invalidity of the two statutes, one known as the "Fuller bill" and the other as the "Carmichael bill."

The reporter will set out in his report of this case section 32 of the Fuller bill.

On the other hand, it seems to be conceded by counsel for appellee that, if the action of the inferior court in awarding the jury trials was proper, and therefore the awarding of the mandamus improper, that part of the statute which requires the judge of the court to proceed with the trial to a final judgment, and which denies to the accused a jury trial only after a conviction, is invalid or in violation of the Constitution. Therefore the validity of this provision of the "Fuller" statute is really the question for decision on this appeal.

It is insisted by appellant that this provision of the statute is in violation of several provisions of our state Constitution relating to jury trials in criminal cases, in that it denies to the defendant the right to a jury trial in the first instance, and requires him to submit to a conviction, and sentence, by the court or judge, without a jury, before he is entitled to a jury trial, which he can then obtain only by taking an appeal and undergoing another trial; and in order to appeal he is required to execute a bond, with sufficient surety, in an amount fixed by the judge or court convicting him, and which must be approved by such judge or court, or, failing therein, he must remain in jail until he can obtain another trial in the appellate court (Code, § 6725), or perform hard labor for the county, pending his appeal, as is provided by section 7607 of the Code.

Whatever may be the origin or true history of the jury trial, it is certain that, ever since the Magna Charta, the right to it has been esteemed a peculiar and in-

estimable privilege by the English race. For centuries this Great Charter has been appealed to, as the protector of this people against the encroachment of the prerogative or despotism of the sovereign. The English colonists who settled in America brought with them this love for and veneration of this cherished right. Notable as showing their veneration, Mr. Proffatt, in his estimable work on Jury Trials (section 82), says that all that is extant of the legislation of Plymouth Colony for the first five years consists of the single regulation, "That all criminal facts, and also all manner of trespasses and debts between man and man, shall be tried by the verdict of twelve honest men, to be impaneled by authority in form of a jury upon their oath." The right was likewise secured by nearly all the American Colonies, in one form or another, and by all as to criminal trials. The colonists, in their Declaration of Rights, claimed the common law of England, and especially that providing trial by a jury of the vicinage. The earliest state Constitutions secured this right in strong and unmistakable language. That of New Jersey, written in 1776, was as follows: "That the inestimable right of trial by jury shall remain confirmed as a part of the law of the colony without repeal forever."

The right was secured by article 3 of the original Constitution of the United States as to criminal trials, but not as to civil trials. The failure of the original Constitution to preserve the right as to civil trials caused such public discontent that it was said by the Supreme Court of the United States (in the case of *Parsons v. Bedford*, 3 Pet. 433, 7 L. Ed. 732) that: "One of the strongest objections originally taken to the Constitution was the want of an express provision securing the right of trial by jury in civil cases." The court, in

the same opinion, further adding: "The trial by jury is justly due to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy." The right as to trials in civil cases was finally secured by an amendment to the federal Constitution. These provisions in the federal Constitution, of course, were restrictions upon the federal government, and not upon the states. The fourteenth amendment to the Constitution is, however, a restriction upon the states, and as to whether or not it preserves the right of jury trial to the citizens of the several states, as to violations of the state laws, may be said to be a doubtful question. There are many expressions of the Supreme Court of the United States and of the Supreme Courts of many of the states to the effect that it does not guarantee the right of jury trial in state courts for violations of state laws.

Mr. Bishop, in his excellent work, New Criminal Procedure (vol. 1, § 891 [2], pp. 515, 516), speaking to this subject, says: "(2) United States as to States. As seen in a previous chapter, the provision requiring 'due process of law' was, in 1868, extended by an amendment to bind the states; the like provision having been already in the Constitution of several of them. In criminal cases, by all opinions, it secures to defendants, as did like words in Magna Charta, those fundamental rights of trial which previous usage had established. By prior expositions in England, this 'due process of law' included jury trial in cases wherein it had been before used; and 'whenever an act of Parliament makes an offense, and is silent on the manner of trying it, it shall be intended to be a trial per pais according to Magna Charta.' So, applying the principle that words in a new law have the meaning they bore of old, in rea-

son this provision should be interpreted to prohibit the abolishment of jury trial in states (for they differ) in which, and to the extent to which, it had been theretofore used. But our national Supreme Court appears to deem otherwise, and to permit the states to take away jury trials if they please, provided they establish other just rules, operating alike on all, a conclusion, however, derivable rather from dicta than from absolute decision. It is certain in interpretation that this amendment to the Constitution creates some restraint on the states; otherwise it is made of no effect whatever, contrary to fundamental doctrine. And is there anything more sacred in a common-law state, where jury trial has always been used, than the right of such trial? And, if this amendment does not forbid such a state to abolish it, what is there left which the state might not equally well take away? What is there left of this constitutional amendment?"

Probably no greater encomiums or panegyrics have even been pronounced upon any legal or civil right than upon this right of trial by jury. It has been denominated "the palladium of liberty," "the nation's cheap defender." Judge Story, in his work on the Constitution, says that it has been from very early time insisted upon, by our ancestors, as "the great bulwark of their civil and political liberties," and watched with unceasing jealousy and solicitude; that they brought this great right and privilege to America with them, as their birthright and inheritance from the English common law; that they and their children have now incorporated it into all state Constitutions, as a fundamental right; that the Constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms; that the great object of a trial by jury

in criminal cases is to guard against a spirit of oppression and tyranny on the part of rulers, and against a spirit of violence and vindictiveness on the part of the people. "Indeed," he says, "it is often more important to guard against the latter than the former. The sympathies of all mankind are enlisted against the revenge and fury of a single despot, and every attempt will be made to screen his victims. But how difficult is it to escape from the vengeance of an indignant people roused to hatred by unfounded calumnies or stimulated to cruelty by bitter political enemies, or unmeasured jealousies. * * * In such a course there is a double security against the prejudices of judges who may partake of the wishes and opinions of the government, and against the passions of the multitude, who may demand their victim with a clamorous precipitancy. So long, indeed, as this palladium remains sacred and inviolable, the liberties of a free government cannot wholly fall."

The same learned justice and author quotes approvingly the following, from Mr. Justice Blackstone, on the subject of trial by jury: "A celebrated French writer, who concludes that, because Rome, Sparta, and Carthage have lost their liberties, therefore those of England in time must perish, should have recollected that Rome, Sparta, and Carthage, at the time their liberties were lost, were stangers to the trial by jury."—Story on the Constitution, vol. 2, §§ 1779, 1780.

While the right is a broad and constitutional one, guarded and assured by the Constitutions, yet it is not given, and cannot be claimed, in every trial in which the citizen may suffer punishment or lose his property. The right is confined to those classes of cases in which the right existed at common law, or in which it was used at the time of the adoption of the Constitution. Where there have been several Constitutions, the right is in ref-

erence to its existence at the time of the adoption of the last one.—*Wynehamer v. People,* 13 N. Y. 378; *Trigally v. Memphis,* 2 Cold. (Tenn.) 382. It has usually been held not to apply to violations of municipal ordinances, nor to minor offenses punishable summarily, as contempts, as to which a jury trial was never known, or as to which, under former usage, a jury trial was not required; nor as to equity suits, except in certain specified cases.—Bishop on Criminal Procedure, vol. 1, § 892 et seq.; Proffatt on Jury Trials, § 95 et seq.

Some of the state courts have decided that the right of jury trial guaranteed by the Constitutions was limited to those civil cases and those offenses as to which the right existed at common law, and was not extended to statutory offenses. This doctrine is severely criticised by the text-book writers on the subject, and by the Supreme Court of the United States, as well as by many of the state courts. See Bishop and Proffatt, supra, and notes to cited sections. Both of these writers cite the case of *Tims v. State,* 26 Ala. 165, as holding to the doctrine that the right applies only to common-law offenses. While this court did decide that the right did not extend to that particular offense charged in that case, which was a proceeding against an overseer of roads for failure to perform certain statutory duties, this offense or proceeding was unknown to both the common law and the statutes at the time the Constitution was adopted, and the court, in that case, was particular to guard against the contention that it did not apply to any statutory offenses, but only to common-law offenses. To this end the court used this language: "We confine ourselves guardedly to the single case we have put, and make no intimation as to offenses which by law were in force at the adoption of the Constitution and were or could be proceeded against either by indictment or information.

Moreover, the court, in this part of the opinion, was speaking in reference to the necessity of an indictment, information, or grand jury, and not of the right to a trial by a petit jury. This is conclusively shown further on in the opinion, where the court says, after concluding as to the necessity of a grand jury: "But it is also urged that the act is in conflict with the twenty-eighth section of the Bill of Rights, which declares 'that the trial by jury shall remain inviolate.' In relation to that position, it is only necessary to observe that it was not intended by this clause of the Constitution to extend the right of jury trial to cases which were unknown either to the common, or statute law, at the time of the adoption of that instrument"—citing the case of *Boring v. Williams,* 17 Ala. 510. The case cited was a civil suit, a summary motion against a tax collector and the sureties on his official bond, for failure to pay over money. In such proceedings a jury trial was never necessary, nor was it guaranteed by the Constitution. As the court said in that case, trials of that kind had largely been had without a jury. "Such had been the practice from a period long anterior to the adoption of the Constitution."

So these cases are not in conflict with the doctrine announced by the text-book writers, nor with the decisions of the Supreme Court of the United States, nor those of New York heretofore cited. In fact, they decide expressly that the right of jury trial does extend to common-law or statutory offenses which were indictable or triable by jury at the adoption of the Constitution. And there are many other cases to the same effect, to wit: *Thomas v. Bibb,* 44 Ala. 721; *Collins v. State,* 88 Ala. 212, 7 South. 260; *Reeves v. State,* 96 Ala. 33, 11 South. 296. In all these cases, and in many others, statutes have been stricken down because

they failed to provide for a jury trial for offenses or actions created by statute, but as to which the right of jury trial existed at the time of the adoption of the Constitution. Therefore it cannot be said that this state is an exception to the rule that the right of trial by jury is guaranteed as to all common or statutory law offenses which were indictable as such or triable by a jury at the time of the adoption of the Constitution.

As violations of the prohibition laws, the offense of which the defendants in this case were charged, had long been a crime in this state, and were indictable offenses, and triable as such by a petit jury, before the adoption of the Constitution, it follows that such trials and offenses are within the protection of the constitutional guaranty "that the trial by jury shall remain inviolate." It can make no difference that the statutes are passed after the adoption of the Constitution, creating new offenses as to such violations of the prohibition laws, and imposing different punishments from those existing at the adoption of the Constitution; such offenses still remain under the protection of the Constitution. Otherwise, all the constitutional guaranties could be destroyed or nullified by the Legislature. It could practically abolish trial by jury, and render the right thereto an illusion and a mockery.—Proffatt on Jury Trial, § 98; *Wynehamer v. People,* 13 N. Y. 426; *Plimpton v. Somerset,* 33 Vt. 283; *State v. Peterson,* 41 Vt. 504; *People v. Baird,* 11 Hun. (N. Y.) 289; Bishop on Cr. Proced. § 892 (4).

The very Constitution which contains the guaranty as to the right of jury trial expressly refers to prohibition laws, and thus showing clearly that violations thereof were at that time recognized as crimes; and the general and local statutes of the state at that time provided for the trials in such cases to be by jury, if

demanded by the accused, and to be in the first instance, and not alone after conviction by the court or judge.

The following are the provisions of our state Constitution which the statute in question is claimed to violate:

(1) "That in all criminal prosecutions the accused shall have the right to be heard," etc., "and in all prosecutions by indictments, a speedy public trial by an impartial jury," etc.—Section 6 of Bill of Rights.

(2) "That no person shall for the same offense be twice put in jeopardy," etc.—Section 9 of the Bill of Rights.

(3) "That the right of trial by jury shall remain inviolate."—Section 11 of Bill of Rights.

(4) "That the enumeration of certain rights shall not impair or deny others retained by the people; and, to guard against any encroachments on the rights herein retained, we declare that everything in this Declaration of Rights is excepted out of the general powers of government and shall forever remain inviolate."—Section 36 (the last) of Bill of Rights.

Prior to the Constitution of 1865, no person could be proceeded against for any indictable offense by information except in cases arising in the militia and volunteer forces when in actual service, or when assembled under arms as a military organization, or by leave of the court, for misfeasance, misdemeanor, extortion, and oppression in office, otherwise than is provided in the Constitution. In the Constitution of 1865, for the first time, appeared a proviso to this section of the Bill of Rights, to the effect that, in cases of misdemeanor, the Legislature might by law dispense with a grand jury and authorize such prosecutions and proceedings before justices of the peace or such other in-

[Alford v. The State, ex rel. Attorney General.]

ferior courts as may be by law established. Prior to this Constitution there was, and could be, no final trial for an indictable offense, other than the exceptions before mentioned, without an indictment. After the Constitution of 1865 (in the year 1866), the Legislature adopted a Penal Code which was compiled by Judge Geo. W. Stone and Hon. J. W. Shepherd, and which was the first Criminal Code ever adopted in this state. The Code provided, among other things, that prosecutions for misdemeanors could be instituted by affidavit and warrant, and conferred jurisdiction upon justices of the peace to institute the prosecutions in such cases, and conferred jurisdiction on them to try certain misdemeanor cases, in addition to their jurisdiction in preliminary proceedings. This Code also created the county courts, and conferred on them criminal jurisdiction of most all misdemeanor cases. But this Code did not dispense with the necessity for an indictment by a grand jury, nor with trial by a petit jury when a jury trial was demanded by the defendant—which demand was provided for in that Code, as to criminal trials in both justice courts and county courts. This Code of 1866 also provided for appeals from justice courts and county courts in criminal cases, by the defendants, after conviction; but it was not made necessary, thereby, to suffer a conviction and to go through two trials, in order to obtain a jury trial. It could be obtained in the first instance by demand made within the proper time—the time prescribed—and this demand not only procured a grand jury, but also a petit jury, if an indictment was found. The defendant, however, could waive his right to both grand and petit jury trials; and these provisions of this Code were often held by this court to be constitutional. This Criminal Code, or parts of it, including these provisions,

[Alford v. The State, ex rel. Attorney General.]

were incorporated into the Revised Code of 1867; and these same provisions, with slight amendments, have appeared in all subsequent Codes and now appear in the Code of 1907 as sections 6733, 6739, 6743, et seq.; 6703, 6718, 6725, et seq. Se also, *Thomas's Case*, 107 Ala. 61, 17 South. 941. These same constitutional provisions as to the right of jury trial appeared in all the subsequent Constitutions of the state, to wit, that of 1868, of 1875, and that of 1901, and the statutory provisions have remained practically the same, under all the Constitutions since that of 1865. However, there have been created some local and inferior courts, as to which the Legislature has not only dispensed with the necessity of a grand jury, but has also provided that, in case the defendant demands a jury trial, the case shall be transferred to the jury docket, if the court be provided with juries for the trial of criminal cases; and, if not, it shall be transferred to the circuit, city, or criminal court, having jurisdiction for jury trials.

Several statutes so creating these courts and so providing for jury trials have been held by this court not to be unconstitutional and not to deprive the defendant of his constitutional right to a jury trial.—*Witt's Case*, 130 Ala. 129, 30 South. 473; *Thomas's Case*, 107 Ala. 61, 17 South. 941; *Frost v. State*, 124 Ala. 85, 27 South. 251. But none of these statutes so upheld by this court required the defendant to first submit to a conviction by the court or judge, before he was entitled of right to demand or have a jury trial—thus compelling him to submit to two trials, or, as it were, to be twice put in jeopardy for the same offense, in order to obtain a jury trial. While in some cases they did provide for an appeal to a jury from a conviction by the court or justice, they provided that the defendant might obtain a jury trial in the first instance if he so desired.—*Ex parte Reese*, 112 Ala. 63, 21 South. 56.

[Alford v. The State, ex rel. Attorney General.]

This court has often decided that a defendant might waive a jury trial if the statute so authorized; but it has never decided that the Legislature could deprive him of the right to a trial by a petit jury, even as to misdemeanors, though it may deprive him of the right to be indicted by a grand jury, as to misdemeanors, because this much is expressly authorized by the proviso to section 8 of the Bill of Rights.—*Connelly's Case,* 60 Ala. 89, 31 Am. Rep. 34; *Thomas's Case,* 107 Ala. 61, 17 South. 941. But the Constitution nowhere expressly provides that the accused can be deprived of his constitutional right to a jury trial, by either the legislative, the judicial, or the executive department, of the government; while it does expressly provide that his right to this jury shall remain inviolate, and that this is one of the rights that is excepted out of the general powers of government. This court has time and time again held that, under the eighth section of the Bill of Rights (formerly the ninth), the Legislature might provide for a waiver of the right to a trial by a petit jury, in misdemeanor cases, and that such provisions were binding on the defendants.—*Connelly's Case, supra; Thomas's Case, supra; McClellan v. State,* 118 Ala. 124, 23 South. 732; *Lewis v. State,* 123 Ala. 86, 26 South. 516. Whatever doubt might have existed at one time as to this proposition, it is now settled, because the Constitution and the statutes have all been readopted since, with this construction placed upon them. But, we repeat, this court has never decided that the accused could be deprived wholly of the right to a trial by a petit jury; but it has several times struck down statutes, for no other reason that they deprived the defendant of the right of a jury trial as to misdemeanor cases. See *Collin's Case,* 88 Ala. 212, 7 South. 260.

It is contended that the act in question does not absolutely deny the right to a jury trial in any case, and that it is therefore valid. It does however, wholly deny the right in the first instance, or first trial. A jury trial cannot be had until the defendant has first submitted to one trial, conviction, and sentence; then, and not until then, he is allowed the right to demand a jury trial. If he is acquitted in the first trial, he is never entitled to a jury trial, though he is accused, arrested, restrained of his liberty, and actually put through a final trial on charge of this crime. If he is ever entitled to a jury trial, it is by submitting to two trials instead of one, by executing two appearance bonds instead of one, one of which he executes as does every other citizen who is only accused of crime—that is, with the presumption of innocence in his favor— and the other, as does the malefactor, convicted of crime, with the presumption that he is a criminal. And, if he cannot make the second bond, the amount of which is to be fixed and approved by the identical authority that pronounces him a criminal, he must remain in jail until he can obtain another trial, in another court in which he can obtain a jury trial, or, if this time be too long, and the imprisonment be too burdensome, by gracious permission of the statute, hire himself out to the county, as a convict, and work and labor, until he can obtain a jury trial. And, if the punishment meted in the first trial be not too severe or great, he may entirely work out his sentence—serve out his punishment—before he obtains a second trial. Then, if he is fortunate enough to be acquitted by the jury, he may obtain compensation for his labor at the same rate that is allowed for convict hire, though he is judicially declared, by the first verdict and the second judgment, to be innocent. If he is convicted on the second trial, he must

then serve out two sentences, or, at best, one, and a part of another.

It may be that a person presumed to be innocent can make an appearance bond, when he could not make another after conviction of crime. It may be that a person who is merely accused of crime, and whom the law and his friends presume to be innocent, could more readily obtain bail, or would be treated more humanely by · the jailor, than after he had been judicially convicted of and sentenced for this crime of which he was accused; for then both the law and his friends must presume that he is a criminal, and he is in law and in fact a convict if he cannot make bond. It is true that this worst condition will not always happen; but it may happen, though it could not, but for this statute, the defendant not having waived his right to a jury trial. In order to uphold this statute, while the constitutional provision declares that trial by jury shall remain inviolate, this worst condition must be allowable. If the statute and the Constitution conflict, the latter must stand and the former fall.

It is not enough that the statute permits a jury trial. The right thereto as it existed at the time the Constitution of 1901 was adopted must continue "inviolate." If the statute imposes additional burdens upon the citizen in order to obtain a jury trial, does the right remain inviolate? The question is not whether it still exists under the statute, but whether it still remains inviolate. If the Constitution only provided that the citizen should not be deprived of a jury trial, or did not require that it remain inviolate, then the question would be a different one.

It is true that we have two dicta in this state, to the effect that the Constitution of this state is not violated

by a statute which gives an untrammeled right to a jury trial on appeal; but these two dicta, one in *Collin's Case,* 88 Ala. 212, 7 South. 260, and the other in *Reeves' Case,* 96 Ala. 33, 11 South, 296, were both used only arguendo, in decisions which each struck down a statute because it denied the constitutional right to a jury trial; and in the latter case the statute then under consideration did allow a jury trial on appeal, but, in order to appeal, the defendant was required to give an appearance bond, and could not obtain an appeal by remaining in jail as is authorized by the statute now under consideration.

There is no case in this state, which we have been able to find, wherein a statute was upheld which denied a defendant accused of an indictable crime of his constitutional right to a trial by a petit jury, in the first instance, because the right was secured on appeal. These dicta above mentioned are the only authority of this state for the proposition that we have been able to find; but in both of these cases the statutes were stricken down because they denied the right of a jury trial, and in neither case was it held, or even said, that the statute could have been upheld, if it had provided for a jury trial only on appeal. And in one of the cases the statute did so provide, though it differed from this statute only in the fact that the appeal could there be had only by giving a bond.

There are expressions in the text-books to the same effect as the dicta referred to, some of which are cited in the dicta, and the texts refer to a number of decisions of other courts. Not all, but most, of these references, and decisions referred to, were in regard to trials in civil cases; and but few, if any, related to constitutional provisions similar to those above set out, of our Constitution. Certain it is that no court has ever de-

[Alford v. The State, ex rel. Attorney General.]

cided that constitutional provisions of such character were not violated by a statute which only allowed the right to a jury trial, on appeal, in a prosecution for an indictable offense as to which a jury trial was allowable in the first instance before the statute. All the cases examined had reference either to civil suits, or to offenses for which the constitutional right of trial in the first instance did not exist, or, if it did, where the defendant had waived it before conviction, or where the Constitution contained no such guaranties as does ours. Our Constitution is very liberal in allowing the Legislature to dispense with grand juries, and in allowing prosecutions in criminal cases to be instituted by affidavit, complaint, or information; but it is very strict in guaranteeing the right to a final trial by a petit jury. It provides that it may be waived, but not that it may be denied or violated.

We will, at the risk of making this opinion too long and tedious, review some of these cases which are cited in the texts and dicta of our own court, to the proposition that, if a jury trial is secured on appeal, the Constitution is not violated.

The case which is most often cited, and which may be said to be the pioneer and leading case on the subject—owing to the fact that the high character of the court trying it, and that of the judge who wrote the opinion (Chief Justice Shaw, of Massachusetts)—is the case of *Jones v. Robbins*, 8 Gray (Mass.) 329. If there is any authority for the proposition that a statute which secures the right of a jury trial for an indictable offense, only by appeal does not violate the constitutional provisions (such as ours) granting a jury trial in such cases, this case is it. In the first place, the statute of Massachusetts under consideration in that case was stricken down, by the decision, for the

[Alford v. The State, ex rel. Attorney General.]

reason that it authorized a conviction and punishment by a police judge or a justice of the peace, for an indictable offense, which, at common law and prior to the statute, could not be done except by a jury; and so stricken, notwithstanding the statute provided for an appeal to a jury and a common-law jury at that. The court, speaking by Chief Justice Shaw, in that case, said and repeated that if the statute had provided only for trials and convictions for petty offenses, or simple larceny, and had not included indictable or felonious offenses, and had provided, as it did, for a jury trial on appeal, the statute would not have violated the Constitution of Massachusetts. While he does not say so in so many words, Judge Shaw's argument is susceptible of the construction that it was because the accused was not, at common law or before the passage of the statute, entitled to a jury trial in such case. Such a statute would not, therefore, involve any constitutional right of the defendant, but only the power of the Legislature to pass such a law. And of course the Legislature had the power to pass any law not prohibited by the state or federal Constitution, and, as the federal Constitution did not apply to states as to the right of jury trial, the statute would be unassailable. Chief Justice Shaw said, in that opinion, that, if the provisions of the federal Constitution as to jury trials had applied to the states, there would be no doubt that a statute like the one under consideration would be unconstitutional.

It should be observed, also, that the provision of the Massachusetts Constitution to which Chief Justice Shaw was referring, when he said the Constitution would not be violated as to petty offenses by securing the right of jury trial on appeal, was quite different from that of ours or from the federal, as he points out

in that opinion. The provision which he was construing reads as follows: "And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty or estate, but by the judgment of his peers or the law of the land. And the Legislature shall not make any law that shall subject any person to capital or infamous punishment, excepting for the government of the army or navy, without trial by jury." It will be observed that this constitutional provision did not require that the right of jury trial should remain inviolate. It only required that no subject should be deprived of his liberty, or punished capitally or infamously, without a trial by jury. If the jury trial was secured on appeal, that provision would have been satisfied. But if the provision had been, as ours, that the jury trial shall remain inviolate, and the subject or citizen was entitled to a jury trial in the first instance, when the Constitution was adopted, then, of course, if the Constitution means anything, it means that he could not be deprived of it in the first instance, and required to stand two trials, in order to obtain it, when, before the statute, he had had to undergo but one.

That the above is the proper construction of the majority opinion in the case of *Jones v. Roberson, supra,* and that it never decided that, if the right of jury trial was secured on appeal, the constitutional provision that the right should remain inviolable was not infringed, is made certain by reference to the concurring opinion of Thomas, J., in that case, and to the opinion of Bigelow, C. J., of the same court, in a later case (*Lewis v. Robbins,* 13 Allen, 552), which review the opinion in the former case, and construed anew the same statute after it had been amended to conform to

the opinion in the case of *Jones v. Robbins*. Thomas, J., in the original case, begins his opinion by saying: "Concurring for the most part in the opinion expressed by the majority of the court, and in the result to which it leads, I have been brought to the same conclusion by a somewhat different, and to myself a more satisfactory, course of reasoning." While he thus concurred in the whole of the conclusion and in most that was said in the opinion, he expressed his dissent as to the constitutional views gratuitously expressed in the opinion, and proceeded to show that they were gratuities and dicta purely. What he said, however, was dictum as well; but it rings like the law. He spoke as follows: The subjecting the accused to one trial by a single magistrate obstructs the right of trial by jury, and essentially impairs its value. It places between the accused and a trial by jury a barrier not necessary for the security of the public, such as the preliminary examination and the holding to bail. It interposes unnecessary delay between the accusation and trial by his peers. It subjects him to unnecessary and often fatally burdensome expense before he can reach the tribunal by which it is his right and his security to be tried. The subject cannot be said, under such a law, to obtain his right 'freely, and without being obliged to purchase it; completely, and without denial; promptly, and without delay.' When you state the proposition that a man may be constitutionally tried for murder by a justice of the peace or a police court, or by any single judge, even after indictment, and that he cannot have a trial by jury until he has been tried by a single magistrate, I think every mind familiar with the Constitution, and with the common-law rights secured by it, shrinks from the conclusion; yet it is to be observed that the twelfth article of the Bill of Rights makes no

distinction between laws subjecting the citizen to capital, and those subjecting him to infamous, punishments. They stand on the same ground. I am aware that in some text-writers of authority, and in the dicta of judges for whom I feel the highest respect, it has been said that, if there is an unobstructed and unclogged right of appeal to a court in which a jury trial can be obtained, the article of the Bill of Rights is satisfied. To this view I answer: (1) That it has never been decided in this commonwealth that the right of trial by jury, secured by the twelfth article of the Bill of Rights for offenses subjecting the citizen to capital or infamous punishment, is satisfied by a right of appeal to a court sitting with a jury; but that, on the other hand, the practical construction of this article, by all departments of the government, has been that, in relation to the higher grades of offenses (in which aggravated larcenies would be included), the subject must be indicted before he can be tried, and, when indicted, can be tried only by his peers."

Chief Justice Bigelow, of the same court, nine years thereafter, reviewing this former decision and construing the statute as amended, said: "This provision (referring to the statute) is a re-enactment of St. 1857, c. 157, which was passed as a substitute for St. 1855, c. 448, after the latter had been pronounced unconstitutional by the court in *Jones v. Robbins*, 8 Gray (Mass.) 329, and was intended to obviate the objections to that statute by taking away from police courts the power to inflict an infamous punishment in case of aggravated larcenies by imposing a sentence or imprisonment in the state prison. Applying the reasoning and doctrine of the case of *Jones v. Robbins* to the case at bar, there can be no doubt that all larcenies, whether simple or aggravated, of property not alleged

to exceed $50 in value are intended to be included within the jurisdiction of police courts, and that no constitutional right is violated by conferring this jurisdiction, because it is accompanied by a restriction on the authority of such courts, which prevents them from the imposition of an infamous punishment for such offenses, and limits them to a sentence of a fine or of imprisonment in the jail or house of correction only."

It will be seen that the Massachusetts statute was stricken down because it deprived the citizen of the right of jury trial in the first instance, when he was entitled to it before the statute. It was stricken down although it conferred the right of jury trial by appeal. The statute was subsequently amended so as to apply to offenses only as to which the accused never had a constitutional right of jury trial, and as amended was upheld. It should be remembered that article 12 of the Massachusetts Constitution, then under consideration, only provided that the accused should not be convicted or punished for an infamous or capital offense except by a jury. It did not provide, as does ours, that the right to jury trial as it existed at the adoption of the Constitution should remain inviolate. Chief Justice Shaw intimates in his opinion that, if the Constitution of Massachusetts contained such a provision, there would be no doubt as to the constitutionality of a statute like the one under consideration.

The next case we will notice, which is cited in the text-books and in the dicta of judges as supporting the proposition that the constitutional provision securing the right of jury trial is not impaired by a statute which secures the right to such trial on appeal, is that of *State of Iowa v. Beneke,* 9 Iowa, 203. This case is not an authority because the Constitution of Iowa expressly authorized the passage of such a statute, and

[Alford v. The State, ex rel. Attorney General.]

provided that the right was not denied if secured on appeal. It was the Constitution itself, as well as the statute, that was attacked in that case. There was no claim made that the statute was in violation of the Constitution. The claim made by the defendant was that the Constitution itself, or section 11 thereof, together with the statute passed in accordance with same, was void, because in violation of the ordinance of 1787. It was this ordinance—an act of Congress—which was claimed to be violated by the Constitution itself. But the very reverse from this case was true in that case; it was the Constitution of Iowa itself which expressly provided for such trials by magistrates without a jury, and secured a jury trial, if at all, only by appeal. This is expressly said by the court, in the opinion, as follows: "Again, the defendant takes the ground that he was entitled to a jury of 12 men before the justice of the peace, which he demanded, and it was refused. He urges that the provision of the Constitution (of Iowa), section 11 of the Bill of Rights, and the statute providing for a jury of less number than 12 before the inferior court, where the life or liberty of a citizen is involved, are void, being in violation of the ordinance of 1787." This is what the court of Iowa says was the question raised and decided. So the decision is anything but an authority in support of the proposition that the statute in question does not violate our Constitution.

The right of trial by jury, with us, is a constitutional right, and as it is so guaranteed to the citizen by that instrument, in the very terms of it, the right must "remain inviolate"; and in order that it shall so remain, and shall never be encroached upon, it is "excepted out of the general powers of government." The right of appeal exists only by virtue of statutes, save

in a very few cases. The right of trial by jury exists though the statutes provide no appeal. It is necessarily the trial in the first instance to which these constitutional provisions must refer, and not the trial on appeal, for the right existed long before any right of appeal was ever given in criminal trials. If the Legislature can take away the right of jury trial in the first instance, by confining it to appeals, and the statute conferring the right of appeal should, for any reason, fall, then the right of jury trial would be entirely taken away. The Legislature can confer the right to as many appeals in civil cases, or to the accused in criminal cases, as it desires; but it cannot do so, as to the state in criminal cases, because the defendant would be twice put in jeopardy—in violation of the Constitution. If the defendant procures the second trial, he cannot plead former jeopardy, because the second trial is allowed in his interest and at his request; and he will not be allowed to complain of that which he has voluntarily invoked. But is there any difference, in effect or result, so far as his right to a jury trial is concerned, if he is compelled by the statute to submit to two trials in order to obtain a jury trial? Is he not twice in jeopardy? True, he cannot plead it, for the reason assigned, and it is considered as waived unless specially pleaded; but, in effect and in law, is he not by virtue of the statute twice put in jeopardy in order to obtain his constitutional right to a jury trial? If the Legislature can thus compel him to submit to two trials in order to secure a jury trial, can it not compel him to stand three? There is no more constitutional inhibition against three than there is against two.

It was said by Justice Curtis, in the case of *Greene r. Briggs*, 1 Curt. 326, Fed. Cas. No. 5,764, in constru-

ing a statute of Rhode Island somewhat similar to the one here under consideration, that: "Natural right requires that no man should be punished for an offense until he has had a trial, and been proven guilty, and a law which should provide for the infliction of the punishment, upon a mere accusation, without any trial, if the accused should fail to furnish two sureties to pay the penalty which might, after the trial, be adjudged against him, would be viewed by all just minds as tyrannical; for it would treat the innocent, who are unable to furnish the required security, as if they were guilty, and would punish them, while still presumed innocent, for their poverty or want of friends." It should be said that the statute under consideration is not necessarily as vulnerable as the Rhode Island statute; but some of its possible results may be more serious. The same learned justice further said, in that case: "It follows that a law which should preclude the accused from answering to or contesting the charge, unless he should first give security in the sum of $200, with two sufficient sureties, to pay all the fine and costs, and which should condemn him to fine and forfeiture unheard, if he failed to comply with this requisition, would deprive him of his liberty or property, not by the law of the land, but by an arbitrary and unconstitutional exertion of the legislative power. And, if this would be the character of a law which made the right of a trial depend upon such a condition, can it be maintained that to prescribe such a condition does not impair the right to a trial by jury?"

Of course, the condition of the bond in this case is different. It is not to pay the fine and costs, but to secure the appearance of the defendant at a second trial; and the amount thereof is not, as in that case, fixed by law. The amount is here fixed by the magis-

trate who convicts the accused, and the bond must be approved by him or the defendant remitted to jail, without bail, to await a second trial, or, at his election, to perform hard labor for the county in the meantime. If the punishment should be a sentence to jail, he would then necessarily have served out a part, and probably all, before he could obtain a jury trial.

The case nearest in point which we have been able to find is that of *Callan v. Wilson*, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223, decided by the Supreme Court of the United States, construing the provisions of the federal Constitution as to the right of jury trial in criminal cases. While, of course, there is some difference between those provisions and similar ones of ours, we do not think there is any difference of principle touching the question whether or not a statute which denies the right of jury trial in the first instance, but allows it on appeal violates the constitutional guaranty of jury trial. The difference between the corresponding provisions of the two Constitutions can make no difference as to this question. The act of Congress in that case provided for the trial of a misdemeanor by the federal police court of the district of Washington, but provided that any person feeling himself aggrieved by the judgment of the police court might appeal to the Supreme Court of the district in which he could have a jury trial. The federal statutes providing for such appeals are very similar to those contained in our Code, for appeals from justices' courts and county courts to city courts or circuit courts. The statutes in question are set out in the opinion, and, so far as regards the questions under consideration in that case and in this, the federal and the state statutes may be said to be the same. The Supreme Court of the United States, speaking through Mr. Justice Harlan, in that case said:

"Except in that class or grade of offenses called petty offenses, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guaranty of an impartial jury to the accused in a criminal prosecution, conducted either in the name or by or under the authority of the United States, secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offense charged. In such cases a judgment of conviction, not based upon a verdict of guilty by a jury is void. To accord to the accused a right to be tried by a jury, in an appellate court, after he has been once fully tried otherwise than by a jury, in the court of original jurisdiction, and sentenced to pay a fine or be imprisoned for not paying it, does not satisfy the requirements of the Constitution."

. This decision cited and reviewed several decisions of other courts, and some of the text-books, on the subject. It has been cited and followed in a number of cases; and as to the question involved in this case, it has not been departed from. It was followed in the case of *Danner v. State*, 89 Md. 228, 42 Atl. 965, annulling a statute which provided for trial of criminal cases by a justice court when jury was waived; and also in the cases of *State v. Gerry*, 68 N. H. 508, 38 Atl. 272, 38 L. R. A. 234, and *Miller v. Commonwealth*, 88 Va. 631, 14 S. E. 161, 342, 978, 15 L. R. A. 446, striking down statutes which violated the constitutional right to a jury trial in the first instance.

It was attempted to be distinguished in a recent Virginia case—that of *Brown v. Epps*, 91 Va. 738, 21 S. E. 119, 27 L. R. A. 676—which case is sometimes spoken of as having overruled *Miller's Case, supra.* But such was not the fact; it did not overrule *Miller's Case,*

while it construed the same statute construed in that case. The opinion states that the statute declared void in *Miller's Case* was subsequently amended to meet the *Miller Case* by allowing the defendant to demand a jury trial in the first instance before conviction. Moreover, the conviction of the defendant in the last Virginia case was by a police justice for the city of Richmond, and he was tried by the sergeant of said city. Whether he was tried for the violation of a state law or the violation of a municipal ordinance does not appear. While this case does criticise the former Virginia case, and tries to distinguish it from the case of *Callan v. Wilson*, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223, it does not overrule the former; nor do we think the former case subject to the criticism it received. Or that it can be distinguished in principle from the case of *Callan v. Wilson*, upon which it was based. The cases are attempted to be distinguished, on the ground that the federal Constitution is a grant of power, while the state Constitution is only a limitation of power. As a general rule this is true; but it is not true or applicable in the case under consideration. The constitutional provisions in both cases were limitations, and not grants. They were both limitations upon the power of the respective sovereigns, the United States, and the state of Virginia. Neither was a grant, and neither was a limitation upon the power of the other sovereign. Both were in the nature of Bills of Rights, in the respective Constitutions.

The Bills of Rights are intended for the protection of individuals and of minorities; they declare the general principles of republican government, and declare the fundamental rights of the citizen.—Cooley on Const. Lim. §§ 45, 46. They enumerate some of the private and inalienable rights of the people, and do

not rest upon the mandate of the statute as a source; they are natural laws existing under the law of reason, and are excepted out of the general powers of government, and which the Constitution declares shall forever remain inviolate.—Tiedeman, Lim. Pol. Pow. § 1; Const. Ala. 1901, § 36.

If the Legislature can dispense with a petit jury in the first instance, for the trial of all crimes in violation of the prohibition laws, and allow trials by jury as to those crimes, only on appeal, then it can abolish capital and penitentiary punishment, and thus make all crimes misdemeanors and trial by a court or judge in the first instance, by allowing a jury trial on appeal. If the accused can be compelled to undergo two trials in order to obtain a jury, he can be compelled to undergo three or more. The Constitution clearly contemplates but one criminal trial, and that is the initial one. All subsequent ones are secured by statute, if at all. The Legislature may authorize the accused to waive his right to a jury trial in the first instance, as to misdemeanors, and, if he does so waive it, the waiver is binding on him; but it cannot deprive him of it, on the first trial. If he has thus waived his right on the first trial, he has no constitutional right to it on appeal. If he has such right on appeal, it is given him by statute, and not by the Constitution, and in that event the statute may require him to give bond before he obtains an appeal or jury trial, because he has no rights in the premises except those given him by the statute.—*Ex parte Reese,* 112 Ala. 63, 21 South. 56.

The following propositions of law, each of which is involved in this case, are deemed to be either axiomatic or undeniable:

(1) The Constitution of Alabama guarantees to every citizen a speedy public trial by an impartial jury, as to all indictable offenses.—Const. 1901, § 6.

(2) All misdemeanors, under the laws of Alabama, are indictable offenses.—*Davis v. State,* 141 Ala. 84, 37 South. 454, 109 Am. St. Rep. 19; Code, § 7129. All violations of the prohibition laws of this state are misdemeanors.

(3) The right of jury trial guaranteed by the Constitution is the right to a jury at the first trial by which the defendant is put in jeopardy, and this is the only trial contemplated by the Constitution because it expressly provides that the citizen shall not be twice put in jeopardy.

(4) These provisions of the Constitution of Alabama guarantee to the citizen the right to be acquitted by a jury, as well as the right that he shall only be convicted by a jury of his peers.

(5) The Constitution guarantees bail to every person before conviction, but not afterwards (except for capital offense where the proof is evident or the presumption is great), and provides that it shall not be excessive in any case.

(6) The Constitution of Alabama, after thus guaranteeing these inalienable rights of the citizen, to a jury trial and to bail, further provides that these rights as they existed at the adoption of the Constitution shall remain inviolate. And, in order to emphasize the principle and put it beyond question, the last clause of the Bill of Rights (section 36) provides: "And to guard against any encroachment on the rights herein retained (and the rights to jury trial and to bail are among them), we declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate."

(7) To except these individual and inalienable rights of the people out of the general powers of gov-

[Alford v. The State, ex rel. Attorney General.]

ernment is to prohibit the Legislature, the executive, or judicial branch, one or all, from destroying or impairing such reserved rights of the people.

(8) To provide that such reserved rights shall forever remain inviolate is to forbid the sovereign through the legislative, executive, or judicial department, one or all, from ever burdening, disturbing, qualifying, or tampering with, these rights, to the prejudice of the people.

(9) It is no sufficient answer or excuse of the sovereign, for taking away from the citizen these rights reserved to him in the Constitution, to say that other similar ones are conferred upon him by statute. This is exactly what the last section of the Bill of Rights expressly says shall not be done.

The right to a jury trial and the right to bail before conviction are inalienable rights of the citizen, expressly reserved in and secured by the Constitution. The right to a jury trial or to bail after conviction is purely and exclusively a statutory right. It is conferred as a matter of grace by the statute, and may be changed or taken away by statute.

The statute in question expressly takes away from the citizen his constitutional right to a jury trial and to bail, and substitutes therefor statutory rights. Under the Constitution the citizen is required to undergo but one final trial, and to make but one reasonable bond when prosecuted for a misdemeanor. Under the statue in question he is required to undergo two trials in order to obtain a jury trial, and is required to execute two bail bonds instead of one, the latter to be fixed and approved by the magistrate who pronounced him a criminal and a convict under both the law and the evidence, and beyond a reasonable doubt. This last bond is not within the protection of the Constitu-

tion, and is not required by the statute to be reasonable. Under the Constitution, if the accused citizen cannot give bail, he is required to remain in the custody of the law only to await one speedy trial by a jury. Under the statute he is required to remain in jail to await two trials, or be deprived of a jury trial entirely. Prior to this statute in question, if the accused could not make bail and did not desire to remain in jail, he was allowed, by grace of the statute, to voluntarily become a convict and to work and labor as such, to await one trial. The statute in question, in such case, requires him to work and labor as a convict, to await two trials instead of one. There can be no doubt that the effect of this statute, whatever its purpose, is to impair and impede the constitutional right of jury trial. The right, therefore, if this statute is valid, does not remain inviolate, as the Constitution says it must do forever. The statute is therefore void, and cannot be enforced without violating the Constitution.

As we have pointed out, there are dicta to the effect that the Constitution does not protect the right to jury trial as to purely statutory misdemeanor cases, but extends only to those in which there was a right of jury trial under the laws of England at the time of the settlement of the American Colonies. This is not true, and there are no adjudicated cases of respectable courts to that effect. And all of the text-book writers on the subject have denied explicitly and repeatedly the correctness and soundness of such dicta.

The law, on the other hand, is that the right is also secured as to all statutory offenses, whether misdemeanors or felonies, as to which the accused was entitled to a jury trial at the time the Constitution was adopted. This is placed beyond dispute or controversy by the only two decisions of this court which can be

said to be authority for upholding the validity of this statute in question. These are the cases of *Collins v. State*, 88 Ala. 212, 7 South. 260, *and Reeves v. State*, 96 Ala. 33, 11 South. 296. The only constitutional question decided in either of these cases was that the statutes under consideration in these cases were void and in violation of the Constitution of Alabama, for the sole reason that they each denied or impaired the right of jury trial secured by the Constitution to the defendant. The defendant in each of these cases was charged only of a purely statutory misdemeanor—one, of using abusive language, the other, of disturbing females—neither offenses being a crime, nor even a misdemeanor, at English common law, and neither would be such, now, in Alabama, but for these statutes.—1 Bishop, Cr. Law, § 7, and section 538, subd. 3. Yet it was adjudged in each of those cases—and expressly so decided, not delivered as mere dictum—that the defendants did have a constitutional right to a jury trial, and that the statute in question impaired or denied this right and was therefore void. And the statute was stricken in each of those cases.

If the accused in those cases had no constitutional right to a jury trial, there could have been no possible objection to the statute, and it is certain that it is the only reason assigned in either case for striking down the statute. Chief Justice Stone, who used the language and expressed the dicta in the cases to the effect, that, as to misdemeanors, the Legislature might dispense with a jury trial, took part in both of these cases, and expressed no dissent in either. So it is made certain that, if this great judge ever entertained any such opinion, he had abandoned it before these cases were decided.

[Alford v. The State, ex rel. Attorney General.]

If it should be conceded that the dicta in the cases of *Collins* and *Reeves, supra,* are correct statements of the law in this state—that is, that the provisions of the Alabama Constitution as to the right of a jury trial do not invalidate statutes authorizing criminal trials without a jury in the first instance if the statutes give defendants an "unqualified and unfettered right" of appeal and of trial by a jury in the appellate court—it would not follow that the statute in question is valid, because it does not give the defendants an unqualified and untrammeled right of appeal and jury trial in the appellate court. The rights given by this statute are very much qualified and very much trammeled, as we have before tried to show. In order to be entitled to an appeal or jury trial, he must first suffer a conviction and be absolutely denied his constitutional right to bail, and thrown upon the mercy or discretion of the magistrate who has not only made up his mind as to defendant's guilt beyond a reasonable doubt, but has publicly declared it and pronounced him a convict; or else he must remain in jail, or go to work at hard labor as a convict and await another trial. The statute would certainly be much less harsh if it allowed the defendant to furnish bail, if he had such, to answer for his appearance at the trial on appeal; but it does not do this. It necessitates the forfeiture of it, if such there be, and the fixing and making of a new one, even though it be for the appearance of a criminal and convict in the eye of the law, and not for the appearance of a man innocent in the eye of the law as did his first bail. If the defendant had never been able to make bail in the first instance, of course the only difference would be that he would be required to remain in jail or a convict twice as long as he would have had to do but for the statute.

It does appear to me that it is juggling with words and stretching logic to hold that such a statute gives an unqualified and untrammeled right to an appeal and a jury trial in the appellate court. The right of trial by jury in criminal cases is not only one of the clearest and most sacred privileges of the citizen, but its effect and result is very different from that of a trial by jury in civil cases. The court or the Legislature may compel a defendant in a civil suit to undergo two or more trials for the same cause of action; but both cannot compel him to undergo more than one, in a criminal case, for the same offense. When a jury has tried him once, and acquitted or convicted him, he can never be tried again for that same offense, unless he consents to it or waives his right or objection thereto. Though the evidence may be undisputed against him in a criminal trial, and be to the court so convincing of his guilt that the court gives the general affirmative charge against him, and thus instructs the jury to convict him, nevertheless the jury has the power to free him, and he has the right to be finally acquitted by the jury. This right is considered of such importance in criminal trials—for some crimes certainly, such as libel—that the Constitutions have allowed the juries to determine both the law and the facts.—Const. Ala. 1901, § 12.

So much of the statute in question as requires the court or judge before which or whom the criminal prosecution is begun to proceed with the trial, notwithstanding the accused demands a jury, and provides that, if convicted, he may appeal to the circuit court or other court of record of like jurisdiction in that county, having jurisdiction in cases of appeal from county courts or justice courts, in such form and in such manner and subject to such restrictions as given

in appeals under the Code of Alabama from such courts, and which only allows the accused the right to trial by jury only on appeal and requires him to undergo two trials for the same offense, is unconstitutional and void.

It therefore follows that the judge of the inferior court properly ordered the prosecutions transferred to the city court of Mobile for a jury trial, on the demand of the accused; and that the mandamus was improperly awarded by the city court of Mobile.

It is further insisted on this appeal, that this same act, known as the "Fuller bill," is unconstitutional and void because of the title of the bill, in that it contains more than one subject, in violation of section 45 of the Constitution of 1901. We cannot agree with counsel in this contention. The bill does not violate this constitutional provision. We hold the act unassailable on this ground, under many decisions of this court, construing similar acts.—*State ex rel. Woodward v. Skeggs,* 154 Ala. 249, 46 South. 268; *Ballentyne v. Wickersham,* 75 Ala. 536; *Cook's Case,* 85 Ala. 226, 3 South. 845; *Stein v. Leeper,* 78 Ala. 517; *Lindsay's Case,* 120 Ala. 172, 24 South. 171, 42 L. R. A. 783.

The title may be so written as to form an index to the provisions of the body of the act; but if only one subject-matter is the essence of the act, and its provisions are referable and cognate to the general subject, the constitutional mandate is not violated. In short, the Constitution is not offended if the act has but one general subject, and that is fairly indicated by the title. —*Ex parte Pollard,* 40 Ala. 98; *Ballentyne v. Wickersham,* 75 Ala. 533; *State v. Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Bell's Case,* 115 Ala. 87, 22 South. 453; *Ex parte Birmingham,* 116 Ala. 186, 22 South. 454; *Lindsay v. United States, etc.,* 120 Ala.

156, 172, 24 South. 171, 42 L. R. A. 783; *Pioneer Irrigation District v. Bradley,* 8 Idaho, 310, 68 Pac. 295, 101 Am. St. Rep. 201.

It is likewise insisted by counsel for appellant in this case that the act known as the "Carmichael bill," which the defendants in the inferior court were charged with violating, is void for the same reason, because the title of the bill contains more than one subject; and for the further reason that the bill was signed by the President pro tem. of the Senate, and not by the presiding officer of the Senate, as required by the Constitution. It is a sufficient answer to this contention in this case to say that the constitutionality of that act was not and could not be raised in the lower court, and cannot be raised on this appeal.

This is a mandamus proceeding, against the judge of the inferior court of Mobile, commanding him to set aside an order which he made at the request of the defendants in his court, transferring the cases to the city court of Mobile for a jury trial. Those defendants, who were charged of violating that statute, and whose cases were ordered transferred, are not parties to this proceeding nor to this appeal.

The constitutionality of that act cannot be tested on this appeal. It will be time enough to do that, on the trial of these cases. Conceding the act to be void or valid, neither could render the act or order of the judge of the inferior court proper—which is the only theory this appellant can insist upon on this appeal. His act or order in the premises being invoked by the defendants, it could not be justified because the act under which they were being tried was unconstitutional. If the act was unconstitutional for the reasons assigned on this appeal, then any order transferring the cases to another court would have been improper; and certainly the

[Alford v. The State, ex rel. Attorney General.]

judge of the inferior court, who is the sole appellant in this case, cannot set up the unconstitutionality of that statute, when it would not at all justify his action in the premises.

SAYRE and EVANS, JJ., concur.

ANDERSON, J.—I cannot agree with the opinion of Justice Mayfield in the holding that the act in question violates section 11 of the Bill of Rights. The act gives the accused the unconditional right of appeal to a common-law jury. It does not require the giving of an appearance bond, or anything else, as a condition precedent to taking an appeal. Of course, he would have to remain in jail if he did not give an appearance bond; but this he would have to do if he had the right to demand a jury trial before being put upon trial in the first instance. He can take the appeal and give or not give the appeal bond at his option; but, in either event, he can get his jury trial, and the fact that the state may require that he be first tried without a jury does not deprive him of his right to a jury trial upon appeal and which fully meets the requirements of the Constitution. Statutes making offenses triable before inferior courts, without a jury or without a common-law jury of 12 men, and which provide for an appeal to a higher court with a common-law jury, have generally been held valid, in states with Constitutions similar to ours as to jury trial, on the ground that they practically preserve the right of a jury trial.—State v. Beneke, 9 Iowa, 203; State v. Brennans, 25 Conn. 278; Gaston v. Babcock, 6 Wis. 563; Jones v. Robbins, 8 Gray (Mass.) 320; Norristown v. Burkett, 26 Ind. 53; Haines v. Levin, 51 Pa. 412; Bryan v. State, 4 Iowa, 349; Beers v. Beers, 4 Conn. 535, 10 Am. Dec. 186; Zelle v. McHenry, 51 Iowa, 572, 2 N. W. 264; Mounds-

*ville v. Fountain,* 27 W. Va. 182; Bishop on Crim. Pro-
cedure, vol. 1, § 893; Sedgwick on Con. of Stat. & Cont.
Law (Pomeroy's Ed.) p. 491.   And the same has been
held in some states even though the statute requires an
appeal bond with security in order to make it effectual.
These cases, however, seem to apply to civil rather than
criminal cases, and this rule was repudiated in the
well-considered case of *State v. Everett,* 14 Minn. 439
(Gil. 330).   It was there held that if the statute re-
quired bond and security, as a condition to taking an
appeal, it was invalid; the court expressly stating, how-
ever, that, if the right of appeal had been made abso-
lute and unrestricted, the constitutional guaranty
would not have been violated.   This case was followed
by our own court in the case of *Reeves v. State,* 96 Ala.
33, 11 South. 296, and quoted from approvingly where-
in it was stated, in effect, that the constitutional re-
quirement would be met, if the defendant could take
an unconditional appeal and then get a jury trial.   It
was held, however, in the *Reeves Case, supra,* as it was
in the Minnessota case, that the act in question was
bad because the defendant could not get a jury trial
except by appeal and which he could not take except
upon condition that he enter into a bond with two or
more sureties.   There the act was bad because the de-
fendant had to give a bond in order to take an appeal.
Here he can appeal to the circuit or city court whether
he gives a bond or not.   Sections 6725 and 6743 of the
Code of 1907 regulate appeals to the circuit or city
courts, and the act does not change the manner or
form of appeals, but provides that existing laws shall
control said appeals, and neither of said sections re-
quire the giving of a bond as a condition precedent to
taking the appeal.   The defendant can take the appeal
whether he gives a bond or not.   If he gives the bond,

he is at large pending said appeal; and, if he does not give the bond, he must remain in jail. He occupies just the same position he would in case he demanded a jury trial before the enactment of the present law, for, in either event, he would have to remain in jail if he did not give an appearance bond; but the giving of such was not a condition precedent to demanding a jury trial and is not now essential to the right of jury trial upon an appeal.

In the case of *Collins v. State,* 88 Ala. 212, 7 South. 260, the statute was condemned because the only right to trial by jury given the accused was a jury by eight persons, which was not a common-law jury, and no right of appeal was given to a common-law jury, as the only right of appeal given was from the county court directly to this court. The opinion, however, was specially guarded, by stating that, "where a right of appeal is secured to a higher court, with a right of trial by a common-law jury, the right may even thus be practically preserved." The act in question gives the accused the unconditional right of appeal. He does no more, and no more is required of him, than if he had originally demanded a jury trial. It is true, he has to undergo a trial; but that does not impede his right to appeal. Whether it would interfere with his making an appearance bond or not, it would not 'affect his right to appeal, as he can appeal without making the bond and get an untrammeled and unfettered trial in the city or circuit court, by a common-law jury, and which is all that the Constitution requires or demands. These views are not only supported by the great weight of cases of the various state courts, but by many text-books, and are only opposed by a few cases, cited in the opinion of Justice Mayfield, and which seem to have been mainly based upon the case of *Callan v. Wil-*

*son,* 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223. This
case condemned an act of Congress providing for the
trial of certain cases in the district court without a
jury, and was held violative of the federal Constitu-
tion, notwithstanding the accused was given the right
of appeal to a common-law jury whether giving a bond
or not. The federal Constitution, on this subject is
not like ours, or that of many states holding, that the
requirements are met when the defendant can get a jury
trial upon appeal. The federal Constitution provides
that "the trial of all crimes, except in case of impeach-
ment, shall be by jury," etc. It would therefore seem
that a jury is essential to the legality of any trial for
crime in the federal court and is perhaps a jurisdiction-
al fact. Our Constitution does not require that the trial
of all crimes shall be by a jury, but "that the right of
trial by jury shall remain inviolate." It does not mean
that all trials must be by jury, but that the right of
jury trial must be preserved, unhurt and unchanged,
and that it is fully preserved and unhurt when the ac-
cused gets a common-law jury upon an appeal and is
given the right to appeal without condition or qualifica-
tion, except perhaps as to the time in which it can be
taken; besides, the Constitution of the United States
is a grant of powers to Congress. It is an enabling and
not a restraining instrument, and Congress can do only
what the Constitution, expressly or by reasonable im-
plication, authorizes; while the Legislatures of the
states possess all legislative powers not prohibited. Our
Constitution does not prohibit the Legislature from
providing for a trial without a jury provided this right
can be had at some other time, and, if an uncondition-
al right of appeal is given to a common-law jury, the
right to jury trial is preserved and remains inviolate.
Moreover, if this distinction did not exist, this *Callan*

*Case, supra,* is not binding on us, as this provision of the federal Constitution does not apply to trials in state courts under state Constitutions and statutes.—*Frost v. State,* 124 Ala. 71, 27 South. 550; *Pearson v. Yewdall,* 95 U. S. 294, 24 L. Ed. 436. Upon all federal questions we will follow the decisions of the Supreme Court of the United States; but, as to other questions, while entertaining the highest regard for said court and its decisions, we do not feel bound thereby and would not hesitate to depart therefrom, when they are contrary to the great weight of authority or to logic and reason. It should be observed, also, that Justice Harlan, in the *Callan Case, supra,* bases his opinion solely upon the authorized power given by the federal Constitution, and on page 552 of 127 U. S., page 1305 of 8 Sup. Ct. (32 L. Ed. 223), alludes to the fact, and without criticism, that in many of the adjudged cases, arising under Constitutions which declare, generally, that the right of trial by jury shall remain inviolate, "the constitutional requirement is satisfied if the right of trial by jury in an appellate court is accorded the accused."

The case of *Miller v. Com.,* 88 Vt. 618, 14 S. E. 161, 342, 979, 15 L. R. A. 441, was not expressly overruled in the case of *Brown v. Epps,* 91 Va. 738, 21 S. E. 119, 27 L. R. A. 676, as the act had been amended to meet the defect pointed out in the first cases; but the court takes said *Miller Case* to task and criticises it rather severely, and indicates that it would overrule same if the statute there considered did not remove the case at bar from its influence.

The case of *State v. Gerry,* 68 N. H. 495, 38 Atl. 272, 38 L. R. A. 228, does support the opinion of Justice Mayfield. This case, however, is contrary to the great weight of authority, and was by an almost equally di-

[Alford v. The State, ex· rel. Attorney General.]

vided court; there being. four judges for and three against the opinion.

The case of *Danner v. State*, 89 Md. 220, 42 Atl. 965, the only other case cited by Justice Mayfield in sup: port of his opinion, does quote approvingly from the *Callan Case, Supra;* but said case does not hold that a' jury trial, upon appeal, will not answer the Consti: tution. That case seems to hold that the action of the magistrate in trying the defendant for a felony was void, and that a failure to demand a jury, before the magistrate, as provided by the act, did not preclude him from being entitled to a jury trial. The opinion recognizes the rule in many of the states that the right of jury trial is preserved by appeal, but makes a distinction between civil cases and misdemeanors, and cases punishable by capital punishment or infamous punishment.

I am therefore of the opinion that the judge of the inferior court improperly. ordered the transfer of the cases to the city court, and that the mandamus awarded by the judge of the city court was proper..

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.

SIMPSON, J.—I agree with my Brother, Anderson, J., in the opinion which he has written in this case, and desire to say further that, while the great Magna Charta has been frequently referred to, as guaranteeing the right of trial by jury, and while it doubtless did embody principles, which, by a process of evolution, eventuated in principle of the right of trial by jury in certain cases, as a part of the common law of England,, yet it simply provided that "no freeman shall be hurt in either his person or property. nisi per legale judicium, parium suorum vel per legem terræe"; in other words, either by

the judgment of, his peers or. by the law of the land. The evil which it was aimed at was that of depriving persons of property or liberties without any process of law at all.—Proffatt on Jury. Trial, §§ 24, 81. Nevertheless, at the, time of the settlement of the colonies in America, it had become a valuable right, according to the common law of England, and was cherished as one of the most valuable rights which then became a part of the common law of the colonies.

It, never was the law of England that a party was entitled to a trial by jury in all misdemeanors.—Proffatt on Jury Trial, § 95.

Our Supreme Court early recognized the right of the Legislature to enforce penalties, and to punish statutory offenses not known to the common law, and not above the grade of misdemeanors, without a jury (Boring, et al. v. Williams, Treas'r, 17 Ala. 510, 517), sustaining a summary judgment against a treasurer.

In the case of Tims v. State, 26 Ala. 165, 168, it is true that the statute for the trial of defaulting overseers was declared unconstitutional, because the Constitution provided that "in all cases tried by a justice of the peace the right of appeal shall be secured," and in the law in question there was no provision for an appeal, nor did the general law in regard to appeals apply to it. But the court also decided that the act was not a violation of the clause of the Constitution that "in all prosecutions by indictment or information;" the defendant is entitled to "a speedy public trial by an impartial jury,"- nor of that clause which provides "that the trial by jury shall remain inviolate." This is not a mere dictum, but one of the points decided in the case. The court says, in referring to the clause that the right of trial by jury "shall remain inviolate": "In relation to this position, it is not necessary to observe that it

[Alford v. The State, ex rel. Attorney General.]

was not intended by this clause of the Constitution to extend the right of jury trial to cases which were unknown either to the common or statute law, at the time of the adoption of that instrument."

In the case of *Thomas v. Bibb*, 44 Ala. 721, 724, the court states the principle that "the right of trial by jury is confined to cases in which it was conferred by the common law, to suits which the common law recognized amongst its old and settled proceedings, and suits, in which legal rights were to be ascertained and determined, in contradistinction to those in which equitable rights alone were recognized, and equitable remedies were administered, or in which was a mixture of law and equity," and states that the right of appeal from judgments of justices of peace and trial de novo complied with the Constitution as to the right of trial by jury, but seems to hold that the suit by a laborer under the act of 1868 (page 455) was simply a common-law proceeding, and therefore the party was entitled to a trial by jury, and, as no appeal was provided for, the act was void. The court goes on to say that the objection to that act would be remedied, either by a provision for an appeal to a jury or one for an appeal to the circuit court, with a trial de novo.

The case of *Chambers v. Stringer*, 62 Ala. 596, 598, 599, was a summary remedy against a treasurer, and the court, quoting *Boring v. Williams, supra*, said: "The Constitutional guaranty that the trial by jury shall remain inviolate does not extend to cases of this character."

The case of *Ex parte Haughton*, 38 Ala. 571, is based merely on the constitutional provision that the right of appeal from judgments of justices of peace should be secured.

The case of *Montgomery & F. Ry. v. McKenzie*, 85 Ala. 546, 549, 550, 5 Soth. 322, 323, was an equity case; but the court (speaking through the learned Stone, C. J.) said: "There can be no doubt that a new right or contention unknown to the common law jury trial is not within the constitutional provision we are considering."

It is true that this may be called a dictum; but it comes with great force, being expressed in such emphatic terms from so able a judge, and reinforced, as it is, by a quotation from Judge Cooley.

While the case of *Connelly v. State*, 60 Ala. 89, 91, 92, 31 Am. Rep. 34, relates to a statute authorizing a waiver of the right of trial by jury, yet the court, after speaking of the right to waive, says (speaking through Stone, J.).: "But we place our decision on a broader ground. Section 9 of the declaration of rights provides 'that in cases of petit larceny, assault, assault and battery, affray, unlawful assemblies, vagrancy, and other misdemeanors, the General Assembly may, by law, dispense with a grand jury, and authorize such prosecutions and proceedings before justices of the peace, or such other inferior courts as may be by law established.' True, this clause of the Constitution only provides, in terms, for the dispensing with a grand jury; but, in conferring on the General Assembly power to 'authorize such prosecutions and proceedings before justices of the peace,' the framers of the Constitution must be understood as intending that such trials should be had, as trials before justices usually take place. We well know that such trials are without juries, unless some special statute makes their presence necessary."

That section has been preserved in each of our Constitutions, and is section 8 of the Bill of Rights in our present Constitution.

[Franklin v. Comer.]

I hold, then, that this act is constitutional, both under this section, in connection with the general principles referred to, and also on the grounds set out in Justice Anderson's opinion.

The majority of the court having concurred in the opinion of Anderson, J.—in so far as it differs from the opinion of Mayfield, J.—it becomes the opinion of the court. It therefore follows that the judgment and order of the lower court is affirmed; and the writ of mandamus will issue accordingly.

Affirmed.