674 So.2d 525 (1995)
Marion M. RAY, as administratrix of the Estate of Thomas R. Ray, deceased,
v.
ANESTHESIA ASSOCIATES OF MOBILE, P.C., et al.
1931023.
Supreme Court of Alabama.
September 22, 1995.
As Corrected on Denial of Rehearing December 15, 1995.
Andrew T. Citrin, Robert T. Cunningham, Jr., Michael A. Worel and David G. Wirtes, Jr. of Cunningham, Bounds, Yance, Crowder & Brown, Mobile, for Appellant.
Carroll H. Sullivan, W. Pemble DeLashmet and Keith S. Miller of Clark, Scott & Sullivan, Mobile, for Ruth B. Johnson, Paula Green, CRNA and Anesthesia Associates of Mobile, P.C.
PER CURIAM.
Marion M. Ray, as administratrix of the estate of her husband Thomas R. Ray, appeals from the circuit court's order denying her motion to hold the damages "cap" established in Ala.Code 1975, § 6-5-547, unconstitutional. Section 6-5-547 is a part of the Alabama Medical Liability Act of 1987. Based on that ruling, the circuit court entered a judgment for the plaintiff for $1,276,873 instead of $1,750,000, the full amount of the jury's verdict in this wrongful death case.[1]
Thomas Ray underwent coronary bypass surgery at Providence Hospital in Mobile on October 2, 1989. During the surgery, he suffered full cardiopulmonary arrest, which resulted in his death. Marion Ray, as administratrix of her husband's estate, filed a wrongful death action against Providence Hospital; Dr. Abel L. Johnson (Dr. Johnson died while the case was pending and his estate was substituted as a defendant); Dr. J. Carmichael; Paula Green, a certified registered *526 nurse anesthetist; C. Cailler, a certified respiratory therapist; and Anesthesia Associates of Mobile, P.C., alleging that an endotracheal tube was improperly placed into her husband's esophagus, and that the improper placement caused oxygen deprivation to his brain and caused the cardiopulmonary arrest. Before trial, the court, by agreement, entered a summary judgment for Dr. Carmichael. On October 28, 1993, the jury returned its verdict. It found against the defendants Green, Anesthesia Associates of Mobile, P.C., and the estate of Dr. Johnson, awarding the plaintiff $1.75 million; it found for the defendants Providence Hospital and Dr. Cailler. On November 5, 1993, those defendants found liable moved to have the verdict remitted, based on the damages cap established by the legislature in § 6-5-547 to apply in wrongful death actions against health care providers. In response, Ray moved the court to declare § 6-5-547 unconstitutional, and she served a copy of her motion on the attorney general.
On March 28, 1994, the circuit judge denied the motion to declare the damages cap unconstitutional and granted the motion to reduce the jury verdict. Thereafter, those defendants found liable withdrew their motion for J.N.O.V. or a new trial. The court entered a judgment in accordance with the verdict as reduced. The defendants did not appeal. However, Ray has appealed from the trial court's order applying § 6-5-547 to reduce the jury verdict. Thus, the sole issue presented in this appeal is whether the circuit court erred in reducing the jury's verdict.[2]
Section 6-5-547 provides:
"In any action commenced pursuant to Section 6-5-391 [wrongful death of a minor] or Section 6-5-410 [wrongful act, omission, or negligence causing death], against a health care provider whether in contract or in tort based on a breach of the standard of care the amount of any judgment entered in favor of the plaintiff shall not exceed the sum of $1,000,000. Any verdict returned in any such action which exceeds $1,000,000 shall be reduced to $1,000,000 by the trial court or such lesser sum as the trial court deems appropriate in accordance with prevailing standards for reducing excessive verdicts. During the trial of any action brought pursuant to Section 6-5-391 or 6-5-410 neither the court nor any party shall advise or infer to the jury that it may not return a verdict in excess of $1,000,000; in the event the jury is so advised or such inference is made the court, upon motion of an opposing party, shall immediately declare a mistrial. The maximum amount payable under this section, $1,000,000, shall be adjusted on April fifteenth of each year to reflect any increase or decrease during the preceding calendar year in the consumer price index of the United States Department of Commerce. Said adjustment shall equal the percentage change in the consumer price index during the preceding calendar year."
(Emphasis added.)
Ray argues that the damages cap established by § 6-5-547 is unconstitutional, because, she claims, it violates the right to trial by jury and the right to equal protection of the laws provided by the Alabama Constitution of 1901. This Court recently addressed those issues in Smith v. Schulte, 671 So.2d 1334 (Ala.1995). In Schulte, this Court held that § 6-5-547 violates the equal protection guarantee of the Constitution of Alabama (Justices Shores, Ingram, and Cook concurring; Justice Kennedy concurring specially; and Justices Almon and Butts concurring in the result). This Court also ruled that § 6-5-547 violates the right to jury trial afforded by § 11 of the Alabama Constitution (Justices Almon, Shores, and Ingram concurring; Justice Kennedy concurring specially; and Justice Butts concurring in the result).
Accordingly, on the authority of Schulte, we hold that the circuit court erred in reducing the amount of the jury's verdict by applying the damages cap. We reverse the judgment and remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
*527 ALMON, KENNEDY,[*] INGRAM, COOK, and BUTTS,[*] JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
MADDOX, Justice (dissenting).
The Court follows Smith v. Schulte, 671 So.2d 1334 (Ala.1995), which struck down the legislatively imposed cap on punitive damages in a wrongful death case arising out of alleged medical malpractice. Smith v. Schulte held that the cap violated the right to trial by jury and the right to equal protection of the laws provided by the Alabama Constitution of 1901.
There is no equal protection provision in Alabama's Constitution. A reading of the debates of the delegates to the 1901 Constitutional Convention should convince anyone that the delegates deliberately did not include an equal protection clause in the Alabama Constitution. See Justice Houston's dissenting opinion in Smith v. Schulte, 671 So.2d at 1348-49, in which I concurred.
In view of the Court's holding in this case and in Smith v. Schulte concerning equal protection of the law, it appears to me that this Court has not been consistent in its holdings regarding the scope of legislative power under the provisions of Section 11 of the Alabama Constitution, and has separately held 1) that the Legislature cannot set a cap on punitive damages if the defendant is an individual or a private business corporation, but 2) that the Legislature can impose a cap if the defendant is a county or a municipal corporation, and 3) that the Legislature can take from the jury the power to set a penalty in a criminal case.[3] In citing Gilbreath v. Wallace, 292 Ala. 267, 292 So.2d 651 (1974), in support of these holdings, it seems to me that the Court fails to appreciate the fact that Gilbreath v. Wallace involved a question of whether the Legislature could reduce the number of jurors in a will contest case from 12 to 6. Because "the substance of the right to trial by jury" in Alabama meant 12 jurors, this Court correctly held that the Legislature could not reduce the number to 6. The word "substance" was emphasized in Gilbreath v. Wallace for a specific reason, and I believe this Court fails to appreciate that fact, and because of that it reaches incongruous results, as it has here.
This is a wrongful death action. In Slagle v. Parker, 370 So.2d 947 (Ala.1979), appeal *528 dismissed by Slagle v. Parker, 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979), a majority of this Court said:
"In Alabama, actions for wrongful death are purely statutory. No such action was known at common law. White v. Ward, 157 Ala. 345, 47 So. 166 (1908); Kennedy v. Davis, 171 Ala. 609, 55 So. 104 (1911). Since the right to bring an action for wrongful death is a product of the legislature, it can be modified, limited, or repealed as the legislature sees fit, except as to causes of action which have already accrued. Slagle v. Reynolds Metals Company, 344 So.2d 1216 (Ala.1977); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). Thus in the previous appeal of the Slagle case, 344 So.2d 1216, this Court held it constitutionally permissible for the legislature through the Workmen's Compensation Act to deprive a father of his right to sue for the wrongful death of his son under § 6-5-391. There the Court stated:
"`The Legislature could take away all remedy for injuries resulting in death, or condition it as it saw fit. It could provide, as it has done under the Workmen's Compensation Act, and as [legislatures have done] in many death damages cases in other states, for a strictly limited kind of recovery.' 344 So.2d at 1218 [quoting] Patterson v. Sears-Roebuck & Co., 196 F.2d 947 [at 949] (5th Cir.1952).' [Emphasis added in Slagle v. Reynolds Metals Co.]
"The causes of action upon which these three appeals are based all arose after the effective date of the 1973 or 1975 amendments which granted immunity from suits by employees injured in the course of their employment to all employees covered by the Workmen's Compensation Act. None of the plaintiffs had any vested right which was a `property' protected by the Due Process clause. The amendments are not violative of the Due Process clause of the Fourteenth Amendment to the United States Constitution, or of any provision of the Alabama Constitution."
370 So.2d at 949-50 (emphasis in last sentence added).
In Smith v. Schulte, this Court cited Gilbreath v. Wallace, 292 Ala. 267, 292 So.2d 651 (1974), to support its holding that the Legislature could not impose a cap on punitive damages in a wrongful death case, on the ground that to do so would violate a plaintiff's right to trial by jury. I participated in the decision in Gilbreath v. Wallace, and I recall the debates surrounding the decision in that case. Gilbreath v. Wallace was a will contest case, and the issue in that case was whether, at the time of the adoption of the 1901 Constitution, a party was entitled to a trial by jury in a will contest case. That case did not address whether the Legislature had the power to set a cap on punitive damages in a statutorily created wrongful death action, the subject matter of this case. Consequently, the decision in this case and the decision in Smith v. Schulte cannot be bottomed upon the principle of law set out in Gilbreath v. Wallace.
In Gilbreath v. Wallace, this Court discussed only the basic and fundamental right to trial by jury, or as it is stated in the opinion, the "substance" of the right to trial by jury, which "is confined to those classes of cases in which the right existed at common law, or in which it was used at the time of the adoption of the Constitution." Gilbreath v. Wallace, 292 Ala. 267, 270, 292 So.2d 651, 653 (1974), quoting Alford v. State ex rel. Attorney General, 170 Ala. 178, 188-89, 54 So. 213, 215-16 (1910) (Mayfield, J., dissenting).
Of course, this statement of the rule is merely a restatement of the principle declared in Thomas v. Bibb, 44 Ala. 721, 722 (1870): "[T]he right of trial by jury is confined to cases in which it was conferred by the common law, to suits which the common law recognized amongst its old and settled proceedings and suits, in which legal rights were to be ascertained and determined, in contradistinction to those in which equitable rights alone were recognized, and equitable remedies were administered, or in which was a mixture of law and equity." (Emphasis added) (citing Story on Const. § 1763; Tims v. State, 26 Ala. 165 (1855); cf., Boring v. Williams, 17 Ala. 510 (1850)).
It is plain that Gilbreath v. Wallace does not address the issue presented in this case, *529 but addresses only whether the Legislature could reduce the number of jurors from 12 to 6. A reading of the opinion in Gilbreath v. Wallace shows that the predominate issue was whether, at common law, a person was entitled to a jury in a will contest case. In fact, Justice Jones, the author of the Gilbreath v. Wallace opinion, discussed in some detail whether "an action to contest the validity of a will [was] a proceeding sui generis, unknown to the common law," 292 Ala. at 270, 292 So.2d at 654, as argued by the appellee in that case. He wrote:
"In the common law of England there was no probate court. Bequests and legacies were handled by the ecclesiastical court and devises by the law court. At law, the heir of a testator could never be deprived of his inheritance without the intervention of a jury to try the issue of devisavit vel non (literal translation: will or no willis the paper purporting to divest the heir of his inheritance the true last will of the deceased, legally executed by him while competent and without the interposition of undue influence?). Somewhat later, wills were submitted to the conscience of the Chancellor. When the question of the validity of a will arose in Chancery, the heir-at-law was entitled to have the issue of devisavit vel non `made up' and sent out of that court to a court of law and submitted to a jury. See Bennet v. Vade, 2 Atk. 324, 26 Eng. Reprint 597 (1742), and Webb v. Cloverden, 2 Atk. 424, 26 Eng. Reprint 656 (1742). This right was recognized in one of our early decisions, Kennedy's Heirs and Executors v. Kennedy's Heirs, 2 Ala. 571, 625 (1841), where it was stated:
"`It may be regarded a settled practice of equity, to direct an issue of law, where a question arises upon the validity of a will, and it would be irregular for the Court to render a decree against the heir until the validity of the devise had been found by a jury.'
"Prior to 1821 (the year of the legislative enactment conferring the right to contest wills in the probate court), Alabama was governed by a statute, Clay's Digest 598, § 15 (1843), enacted in 1807 through the Mississippi Territorial Government, which permitted the contest of wills in Equity. This statute was the forerunner to Tit. 61, §§ 62 and 67, Code of Alabama 1940 (Recomp.1958). The latter section and the earlier provision authorize a jury trial, but the language is merely permissive, i.e., that the court may direct an issue to be tried to a jury. Nevertheless, the Court in Hill v. Barge, 12 Ala. 687, 692 (1848), construing the earlier act, declared that the right was absolute on demand of either party and not committed to the discretion of the Chancellor.
"Thus, it can be seen that in Alabama there has always been a right to trial by jury in a will contest. The Texas Supreme Court in Cockrill v. Cox, 65 Tex. 669, 674 (1876), when faced with a similar issue, held:
"`The provision in the Constitution of 1876, that the right of trial by jury shall remain inviolate, must be considered as perpetuating the right in the cases, in which, at the date of its adoption, it had been so universally recognized and firmly established, as in the contests arising over the proof of wills.'"
292 Ala. at 270-71, 292 So.2d at 654. (Emphasis original.) Why did Justice Jones discuss whether a will contest case was a "law" case or an "equity" case? Because the right to trial by jury was to be determined by the answer to that question. Therefore, a party's substantive right to trial by jury is determined by whether the party's action is "at law" or "in equity," or is an action where the right to trial by jury, at the time of the adoption of the 1901 Constitution, had been universally recognized and firmly established in Alabama? The Court addressed the substantive right in Gilbreath v. Wallace by the following statement (the word "substance" was italicized in the original opinion):
"[I]f the right to a trial by jury in a will contest is a right secured by the Alabama Constitution, then the Legislature may not abridge or limit the substance of that right."
292 Ala. at 269, 292 So.2d at 652. I believe that the whole premise of Gilbreath v. Wallace was based on the fact that the right to a *530 trial by jury in a will contest case had been universally recognized and firmly established in Alabama at the time of the adoption of the 1901 Constitution, and the substance of that right was a trial by a jury of 12 who must reach a unanimous verdict. In my judgment, that is all that Gilbreath v. Wallace held.
I do not believe that Gilbreath v. Wallace should be used as authority for the holding in this case that the people of Alabama, by adopting § 11 of the Constitution, intended that their Legislature could not limit the amount of damages that could be awarded in a wrongful death actiona creature of the Legislature that was meant to prevent homicidesan action that it had created.
In summary, did the people intend that the Legislature could not limit the amount of penalty that could be assessed in a wrongful death action, an action that is purely statutory? They did not so intend.
I do not believe that § 11 should be interpreted to mean that the people prohibited their Legislature from deciding what did or did not constitute a wrong, from providing what it considered to be the appropriate penalty, or from taking away from the jury the power to set the penalty, as it has in every criminal case in this State.
I believe that the Legislature had the power to limit the amount of damages that a jury can assess in a wrongful death case involving a health care provider.
It cannot be disputed that wrongful death actions are creatures of statute in Alabama. They were unknown to the common law at the time of Alabama's first Constitution and they have not come into existence in Alabama as a part of the evolving common law. Consequently, § 6-5-547 does not violate the right to trial by jury protected by § 11 of the Alabama Constitution.
HOUSTON, Justice (dissenting).
I respectfully dissent. See Smith v. Schulte, [Ms. 1930362, August 18, 1995] 671 So.2d 1334 (Ala.1995) (Houston, J., dissenting).

On Application for Rehearing
PER CURIAM.
OPINION CORRECTED; APPLICATION OVERRULED.
ALMON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
HOOPER, C.J.,[*] and MADDOX and HOUSTON, JJ., dissent.
NOTES
[1] The $1,000,000 damages cap established by § 6-5-547 has been adjusted upward based on increases in the consumer price index since the passage of the statute.
[2] The defendants did not cross appeal to challenge the sufficiency of the evidence supporting the jury verdict or to challenge the amount of the jury's verdict as excessive.
[*] Although Justice Kennedy did not sit at oral argument of this case and although Justice Butts was not a member of this Court when this case was orally argued, they have listened to the tape of oral argument and have studied the record.
[3] In Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993), this Court, grounding its decision on the provisions of Section 11, held that the Legislature could not establish a cap on punitive damages in a civil damages case involving a corporate defendant, but in Garner v. Covington County, 624 So.2d 1346 (Ala.1993), construing the same provisions of the Constitution, held that the legislature could impose a statutory cap on punitive damages where the defendants were a city and a county, and during the same term of Court, in Ex parte Giles, 632 So.2d 577 (Ala. 1993), also held that Section 11 did not prohibit the Legislature from taking from the jury the right to impose penalties in criminal cases. In each of these cases, "the substance of the right to trial by jury" remained inviolate, because in each case the parties had a jury of 12 who reached a unanimous verdict. I have great difficulty understanding the Court's rationale, when deciding the extent of legislative power, in making a distinction on the extent of that power based on whether the defendant is an individual, a corporation, a municipal corporation, a county, or a defendant in a criminal case. The right to a jury of 12 persons who must agree on a verdict, the substance of the right to trial by jury, is present in each of the cases. Unfortunately, I have had to state this immutable principle of legislative power on several occasions. See the views I expressed in some detail in Henderson, supra. See other writings of mine in other cases where I was of the opinion that the Court expanded the "substance of the right to trial by jury" to include matters never intended to be included by this Court when it decided Gilbreath v. Wallace, 292 Ala. 267, 292 So.2d 651 (1974). Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 178-83 (Ala. 1991) (Maddox, J., dissenting); Clark v. Container Corp. of America, 589 So.2d 184, 201-02 (Ala. 1991) (Maddox, J., dissenting); Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d 414, 423-27 (Ala.1991) (Maddox, J., dissenting). For my views on the scope of legislative power involving other provisions of Alabama's Constitution, see, Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812, 824-29, 833-34 (Ala.1988) (Maddox, J., concurring in part; dissenting in part); Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 355-58 (Ala.1980) (Beatty, J., dissenting, joined by Maddox, J.); Grantham v. Denke, 359 So.2d 785, 789-92 (Ala. 1978) (Maddox, J., dissenting); Bagby Elevator & Electric Co. v. McBride, 292 Ala. 191, 200-08, 291 So.2d 306 (1974) (Maddox, J., dissenting).
[*] Chief Justice Hooper did not sit at oral argument of this case. However, he listened to the tape of oral argument on November 14, 1995.