749 So.2d 393 (1999)
GOODYEAR TIRE AND RUBBER COMPANY and Nathaniel Willie Jefferson Brock
v.
Teresa M. VINSON.
Teresa M. Vinson
v.
Goodyear Tire and Rubber Company and Nathaniel Willie Jefferson Brock.
1972057 and 1972186.
Supreme Court of Alabama.
April 23, 1999.
Rehearing Overruled July 2, 1999.
Andrew L. Frey and Melanie L. Oxhorn of Mayer, Brown & Platt, New York City, New York; and Larry W. Harper, H.C. Ireland III, and W. Perry Webb of Porterfield, Harper & Mills, P.A., Birmingham, for appellants/cross appellees Goodyear Tire and Rubber Company and Nathaniel Willie Jefferson Brock.
Stephen D. Heninger and Joseph W. Buffington of Heninger, Burge & Vargo, L.L.P., Birmingham; and Sheldon L. Watkins of Robinson & Watkins, Birmingham, for appellee/cross appellant Teresa M. Vinson.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala.R.App.P.
KENNEDY, COOK, and JOHNSTONE, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and BROWN, JJ., concur specially.
HOOPER, Chief Justice (concurring specially).
As Chief Justice, I intend to remain sensitive to the goal of preserving a consistent administration of justice in the State of Alabama. I think this Court should revisit Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993). See my special writing in Smith v. Schulte, 671 So.2d 1334 (Ala.1995) (Hooper, C.J., dissenting from the overruling of the application for rehearing). All parties litigating in the courts of this State should now be on notice that this Court is willing to reconsider the Henderson ruling that the punitive damages cap of § 6-11-21, Ala.Code 1975, is unconstitutional.
HOUSTON, Justice (concurring specially).
I concur in the summary affirmance; however, I write separately to once again express my views on Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993).
On June 25, 1993, this Court, by a 5 to 3 vote, declared Ala.Code 1975, § 6-11-21, limiting an award of punitive damages to $250,000, unconstitutional as violating Article I, § 11, of the Constitution of Alabama of 1901, which guarantees the right to trial by jury. Henderson. The correctness of this Court's decision in Henderson was challenged in dissents to Henderson when it was released. Although the majority opinion in Henderson has been the opinion of this Court for almost six years, the holding in Henderson and the selective application of its interpretation of the words "the right to trial by jury shall remain inviolate" have been criticized from the day that case was released and as recently as January 1999. See Henderson, 627 So.2d at 894-915 (Maddox, Houston, and Steagall, JJ., dissenting); Ex parte Giles, 632 So.2d 577 (Ala.1993) (Maddox, J., concurring specially, at 586-87; Houston, J., concurring in the result, at 587-89); Bozeman v. Busby, 639 So.2d 501 (Ala. 1994) (Maddox, J., dissenting, at 503; *394 Houston, J., dissenting, at 503-04); Complete Health, Inc. v. White, 638 So.2d 784 (Ala.1994) (Houston, J., dissenting, at 790); Smith v. Schulte, 671 So.2d 1334 (Ala.1995) (Maddox, J., dissenting, at 1347-48; Houston, J., dissenting, at 1348-54; on application for rehearing, Hooper, C.J., dissenting, at 1355-61; Maddox, J., dissenting, at 1361-66; and Houston, J., dissenting at 1366-68); Ex parte Jackson, 672 So.2d 810 (Ala.1995) (Houston, J., concurring in the result, at 811-13); Ray v. Anesthesia Assocs. of Mobile, P.C., 674 So.2d 525 (Ala. 1995) (Maddox, J., dissenting, at 527-30; Houston, J., dissenting, at 530); Loyal American Life Ins. Co. v. Mattiace, 679 So.2d 229 (Ala.1996) (Maddox, J., dissenting, at 245-47); Ex parte Scott, 728 So.2d 172 (Ala.1998) (Houston, J., concurring specially); Oliver v. Towns, 738 So.2d 798, 804 n. 7 (Ala.1999) (Henderson questioned by a majority of the Court).
Henderson, in effect, overruled 83 years of precedent holding that "the State [has] the right to remit punitory damages." Meighan v. Birmingham Terminal Co., 165 Ala. 591, 599, 51 So. 775, 778 (1910). The facts in Meighan showed that between the infliction of the injury and the time of the trial, the Legislature enacted an act that relieved the defendant of liability for damages that might have been assessed for the purpose of punishment. This Court held:
"Exemplary damages are in no case a right of the plaintiff.... The state had the right to remit punitory damages, and by implication did so when it passed the act of ratification."
165 Ala. at 599, 51 So. at 777-78.
The defendants have asked this Court to overrule Henderson. I think this Court should revisit its decision in Henderson; however, I think it should do so only in a case in which the issue of the constitutionality of § 6-11-21 has been properly preserved for review. I thought initially that this was such a case, but, although I carefully examined the record, I was unable to find any adverse ruling by the trial court upon which this Court could predicate error. I must emphasize, though, that this was a very close question, at least from my perspective. However, given my unrelenting criticism of Henderson since the day it was released, I feel that I must exercise extreme caution in choosing the case in which to revisit it. I will not sacrifice other standards of appellate review at the altar of expediency, just so that I can reconsider an issue that, I believe, has been wrongly decided. This Court strives first and foremost to be an "error corrector," not an "error maker." However, when this Court does revisit Henderson in a future case where the issue of the constitutionality of § 6-11-21 is squarely presented, the following well-established principles of law will control my decision.
The right to trial by jury guaranteed by § 11 of the Alabama Constitution is confined to those classes of cases in which the right existed at common law or by statutory law at the time of the adoption of the Constitution of 1901. Gilbreath v. Wallace, 292 Ala. 267, 270, 292 So.2d 651, 653 (1974) (all Justices concurring); Miller v. Gaston, 212 Ala. 519, 103 So. 541 (1925); In re One Chevrolet Auto., 205 Ala. 337, 87 So. 592 (1921); Alford v. State ex rel. Attorney General, 170 Ala. 178, 54 So. 213 (1910). The concept of the constitutional right to trial by jury, extending to those cases in which that right existed by statutory law at the time of the adoption of the most recent Constitution, predated the Constitution of 1901. See Tims v. State, 26 Ala. 165 (1855). This is consistent with the way in which the common law grew in this country. See Manoukian v. Tomasian, 237 F.2d 211, 215 (D.C.Cir.1956).[1]
*395 What clear and paramount right did Article I, § 11, of the Constitution of 1901, guarantee to the citizens of this state? Section 11 explicitly states "[t]hat the right of trial by jury shall remain inviolate." This Court, interpreting these words, has consistently held that the ratification of § 11 effected a "freezing" of the right of trial by jury as that right existed at common law or by statute in 1901. Stated differently, § 11 did not enlarge the right of trial by jury that existed in any individual when the Constitution was ratified. Gilbreath v. Wallace, supra.
What exactly, then, were an individual's rights to a trial by jury before the ratification of the 1901 Constitution? This Court and the Courts of Appeals of this state have held that an individual, before the Constitution was ratified, had the right, in certain cases, to have a 12-person, impartial jury unanimously decide the facts. See Clark v. Container Corp. of America, Inc., 589 So.2d 184 (Ala.1991), citing Gilbreath v. Wallace, supra; Kirk v. State, 247 Ala. 43, 22 So.2d 431 (1945); Baader v. State, 201 Ala. 76, 77 So. 370 (1917); Alford v. State ex rel. Attorney General, supra; Tims v. State, supra; Culbert v. State, 52 Ala.App. 167, 290 So.2d 235 (1974); Brown v. State, 45 Ala.App. 391, 231 So.2d 167 (1970); Dixon v. State, 27 Ala.App. 64, 167 So. 340, cert. denied, 232 Ala. 150, 167 So. 349 (1936); Walter B. Jones, Trial by Jury in Alabama, 8 Ala. L.Rev. 274, 277 (1956); 16 Ruling Case Law 181 (1917). Of specific importance to this case is the fact that at common law juries were allowed, in proper cases, to assess punitive damages, L. Schleuter and K. Redden, Punitive Damages, § 1.3, at 12 (2d ed.1989); and, indeed, punitive damages were awarded to injured parties who sued. See, e.g., Rhodes v. Roberts, 1 Stew. 145, 146-47 (Ala.1827), where this Court, in affirming a $1,500 judgment against the defendant under a trespass theory, held:
"Where the injury is to the person of the plaintiff, the amount of damages cannot be measured by any certain and precise standard. The negligence may be very gross and reprehensible, and in all such cases the jury may give smart money, if in their view the circumstances are such as to require it."

(Emphasis added.) However, as Rhodes illustrates, even though at common law juries were allowed to assess punitive damages, and even though punitive damages were awarded to injured parties who sued, punitive damages at common law were awarded for the sole purpose of vindicating and protecting society's right (i.e., the right of the public) to be free from certain kinds of egregious tortious conduct, not for the purpose of providing a private compensatory remedy. See, e.g., Meighan v. Birmingham Terminal Co., supra, 165 Ala. at 598-99, 51 So. at 777-78, wherein this Court stated:
"If conceivably a verdict for punitory damages might have been based upon these facts, we think the passage of the act of March 6, 1907, before the time of the trial, though subsequent to the infliction of the injury, ... had the effect to relieve defendant of liability for damages which it is assumed might otherwise have been assessed for the purpose of punishment. Such damages are assessed in proper cases in the interest of the state. They are awarded not for the compensation of the plaintiff, but as a warning to other wrongdoers. A plaintiff has no right to maintain an action merely to inflict punishment. Exemplary damages are in no case a right of the plaintiff, but are assessed at the discretion of the jury for the purpose indicated.... The state had the right to remit punitory damages, and by implication did so when it passed the act of ratification. That act could not, of course, have had effect in the way of divesting previously vested rights, and by its terms, out of abundance of caution merely, those rights were preserved. The plaintiffs right to complete and adequate compensation for property taken or injured, including injury to his special right in the highway as a means of *396 enjoying the free and convenient use of his abutting property, remained without impairment."
(Emphasis added.)
The idea that punitive damages are awarded solely for the purpose of vindicating and protecting society's interests by punishing those who engage in egregious tortious conduct and deterring them and others from engaging in such conduct in the future, and the idea that only an amount necessary to accomplish these goals may be awarded, have been restated many times since Meighan. See, e.g., Industrial Chem. & Fiberglass Corp. v. Chandler, 547 So.2d 812, 837 (1988) (opinion on application for rehearing, following opinion after remand [1989]):
"Although not imposing the stigma of crime or the unique burdens of imprisonment, punitive damages nonetheless serve to place the defendant on notice that it has engaged in conduct considered intolerable by society and also [serve] to deter others from following the defendant's example. But [when a punitive award is levied], the degree or amount must be comparable to the act deserving punishment. And though the defendant has engaged in intolerable conduct, it does not surrender its right to `fair' punishment; in other words, `although punitive damages need bear no particular relationship to actual damages, they, nonetheless, must not exceed an amount that will accomplish society's goals of punishment and deterrence.' Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), citing Maryland Casualty Co. v. Tiffin, 537 So.2d 469 (Ala.1988), City Bank of Alabama v. Eskridge, 521 So.2d 931 (Ala.1988), and Roberson v. Ammons, 477 So.2d 957 (Ala.1985)."
Consequently, before the ratification of the 1901 Constitution, if the defendant was not shown to be guilty of the kind of egregious conduct that was contemplated by the common law as deserving of punishment, then the jury had no legal authority to award punitive damages. Furthermore, in cases involving egregious conduct, discretionary awards of punitive damages by juries were subject to postjudgment review by the courts under an abuse-of-discretion standard. Thus, the kind of discretion that juries were allowed to exercise at common law before the ratification of the 1901 Constitution was a limited discretion, which this Court has compared to the kind of "legal" discretion that is routinely exercised by courts. Coleman v. Pepper, 159 Ala. 310, 49 So. 310 (1909). Black's Law Dictionary 466-67 (6th ed.1990), under "Discretion," defines "judicial and legal discretion," in pertinent part, as follows:
"These terms are applied to the discretionary action of a judge or court, and mean discretion bounded by the rules and principles of law, and not arbitrary, capricious, or unrestrained. It is not the indulgence of a judicial whim, but the exercise of judicial judgment, based on facts and guided by law, or the equitable decision of what is just and proper under the circumstances. It is a legal discretion to be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law .... A liberty or privilege to decide and act in accordance with what is fair and equitable under the peculiar circumstances of the particular case, guided by the spirit and principles of the law ...."
(Emphasis added.)
It is clear, therefore, that before the ratification of the 1901 Constitution an individual had the right in certain cases to have a jury make the factual determination whether punishment was necessary to protect society's interests and to have the jury award punitive damages if the jury was so inclined. This right received constitutional protection by virtue of § 11. However, it is equally clear that in performing its factfinding function, before the ratification of our present Constitution in 1901, the jury was always subject to the rule of law in exercising its discretion. The jury could award punitive damages only in those *397 cases involving egregious tortious conduct on the part of the defendant, and any award made by the jury in such a case could not exceed an amount that would accomplish society's goals of punishment and deterrence. When the Constitution of 1901 was ratified, the right that was afforded constitutional protection by § 11 was the right of an individual to have a jury act as factfinder and to return a verdict in accordance with the rules of law applicable to the particular case. Before the ratification of the 1901 Constitution, there was no legislative restriction on the exercise of a jury's discretion in awarding punitive damages, such as the restriction imposed by § 6-11-21. In other words, when the 1901 Constitution was adopted the legislature had taken no steps to declare the maximum amount a jury could award to vindicate and protect society's interests. It was the function of the court, acting on a case-by-case basis, to declare what this amount was and to order a remittitur if necessary. Although § 11 prohibited legislative interference with an individual's common-law right to have a jury perform its historic factfinding function, § 11 did not confer upon an individual the right to have a jury perform this function in a vacuum, i.e., freed from the guidance or control of the law.
Section 6-11-21 represents a change in the law only in the sense that it declares the maximum amount that is allowable to accomplish society's goals of punishment and deterrence. Section 6-11-21 did not affect the discretionary authority that the jury had, before the ratification of the 1901 Constitution, to award punitive damages. The jury has never been allowed to award more than an amount deemed necessary by society to punish and deter. Who has the authority to determine the outer limits of punishment and deterrence? Those duly elected by a majority of Alabamians to make law, or 12 people randomly selected from driver's license records, who have survived challenges for cause, Batson challenges,[2] and peremptory challenges of attorneys for particular parties in a particular civil action? I believe those duly elected, not those randomly selected, have the power to determine what is a maximum amount needed to punish and deter. When viewed from this perspective, it is clear that § 6-11-21 did not change the law, at least with respect to the extent of the jury's discretion to award punitive damages.
The legislature's power to regulate punitive damages is derived from two provisions in the Alabama Constitution. "The legislative power of this state shall be vested in a legislature...." (Art. IV, § 44). "It is of course well understood that the only authority which has the power to make State laws is the legislature. Section 44, Constitution." Personnel Bd. of Mobile County v. City of Mobile, 264 Ala. 56, 60-61, 84 So.2d 365, 369 (1955) (emphasis added). "Section 44 of the Constitution is the express constitutional provision for representative government." Opinion of the Justices No. 263, 379 So.2d 939, 940 (Ala.1980). "`It [representative government] is based on the concept that democratic government functions best through a written Constitution vesting the full legislative power in representatives chosen by the people....'" Opinion of the Justices No. 201, 287 Ala. 321, 323, 251 So.2d 739, 741 (1971) (quoting Opinion of the Justices No. 36, 232 Ala. 56, 166 So. 706 (1936)).
According to the plain wording of Art. IV, § 104(28), the legislative department of government has the power to "[r]emit[ ]... penalties," if it does so by general law. Section 6-11-21 is a general law. "Penalty" includes punitive damages. "Remit" means to "give up" or "reduce." "The state had the right to remit punitory damages...," Meighan, 165 Ala. at 599, 51 So. at 778, if it did so by a general law, which § 6-11-21 is.
No citizen has a right to recover punitive damages; therefore, there is no life, *398 liberty, or property interest of a plaintiff involved where punitive damages are concerned. State ex rel. Galanos v. Mapco Petroleum, Inc., 519 So.2d 1275, 1277 (Ala. 1987), stands for the proposition that if two provisions of the Constitution are seen to conflict and one of them is contained in Art. I, the Declaration of Rights, then the provision from the Declaration of Rights will prevail. State ex rel. Galanos specifically involves § 35, "Objective of Government." This has paramountcy among constitutional provisions:
"[T]he sole and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property, and when government assumes other functions it is usurpation and oppression."
Government includes the judiciary:

"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
Section 42, Constitution. (Emphasis added.)
Because a plaintiff has no life, liberty, or property interest in an award of punitive damages, the only legitimate end of government in connection with the issue of punitive damages is to protect a defendant's property interest in not having to pay punitive damages that would exceed government's goal of punishment and deterrence. Government, in its legislative capacity, set society's goal of punishment and deterrence by enacting § 6-11-21. Whether this was wise or needed is not for the judiciary to say, because the legislature was not prohibited by the Constitution from enacting § 6-11-21. Not only was the legislature not prohibited from enacting § 6-11-21, it was expressly empowered to do so by the Constitution (§ 104(28)). "The Legislature shall pass general laws for the cases enumerated in this section." See Official Proceedings of the Constitutional Convention of 1901 at 1799-1800.
I note that should this Court overrule Henderson, then the $250,000 cap on punitive damages provided by § 6-11-21 will, in my view, be revived. See State ex rel. Attorney General v. Paul, 5 Stew. & P. 40, 49 (Ala.1833), overruled on other grounds, State ex rel. Attorney General v. Porter, 1 Ala. 688, 701 (1840), which cites with approval the following from Paul: "`The statute [declared unconstitutional] is not repealed: it remains in the code of laws; and should the same, or a higher tribunal, subsequently determine it to be consistent with the constitution, it is subject to be enforced accordingly.'" See Legal Tender Cases, 79 U.S. (12 Wall.) 457, 533-34, 20 L.Ed. 287 (1870); Legg's Estate v. Commissioner, 114 F.2d 760, 764 (4th Cir. 1940); Jawish v. Morlet, 86 A.2d 96, 97 (D.C.1952); State ex rel. Badgett v. Lee, 156 Fla. 291, 294-95, 22 So.2d 804, 806 (1945); Christopher v. Mungen, 61 Fla. 513, 532-33, 55 So. 273, 280 (1911); McCollum v. McConaughy, 141 Iowa 172, 177, 119 N.W. 539, 541 (1909); William Michael Treanor & Gene B. Sperling, Prospective Overruling and The Revival of "Unconstitutional" Statutes, 93 Colum. L.Rev.1902, 1912-13 (1993); Earl T. Crawford, The Legislative Status of an Unconstitutional Statute, 49 Mich. L.Rev. 645, 651-52 (1951); Mark Graham, Note, State v. Douglas: Judicial "Revival" of an Unconstitutional Statute, 34 La. L.Rev. 851 (1974).
MADDOX, J., concurs.
SEE, Justice (concurring specially).
I write specially to reiterate what this Court noted in Oliver v. Towns, 738 So.2d 798, 804 n. 7 (Ala.1999) (See, J.), concerning Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993):
"Given the post-Henderson developments in the concept of due-process law, see, e.g., BMW of North America, Inc. *399 v. Gore, 517 U.S. 559[, 116 S.Ct. 1589, 134 L.Ed.2d 809] (1996), and the forceful rationale of the dissents in Henderson, 627 So.2d at 894 (Maddox, J., concurring in part; dissenting in part), and id. at 903 (Houston, J., dissenting), we question whether Henderson remains good law. See Henderson, 627 So.2d at 900-01 (Maddox, J., concurring in part; dissenting in part)...."
MADDOX, J., concurs.
LYONS, Justice (concurring specially).
I agree with Justice Houston's preference for deferring the question whether Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993), should be overruled. This Court should not make such a momentous decision in a setting where there is a debatable issue as to whether the record is adequate to support review of this issue on appeal.[3] When we have before us a case in which the trial court has expressly ruled that the "cap" statute (§ 6-11-21, Ala.Code 1975) can or cannot be applied, and it is squarely presented to us on appeal, then I believe that we should revisit Henderson.
I am unaware of any other state court of last resort that has struck down a legislative cap on punitive, as opposed to compensatory, damages on constitutional grounds. As of this writing, the only other citation I find by a state court to Henderson v. Alabama Power Co., supra, appears in Smith v. Printup, 254 Kan. 315, 866 P.2d 985, 997 (1993), appeal after remand, 262 Kan. 587, 938 P.2d 1261 (1997), where the Kansas Supreme Court cited with approval the dissenting opinions of Justices Maddox and Houston. Perhaps such a case striking down caps on punitive damages, if it exists, can be called to the Court's attention if the issue whether to overrule Henderson should come before us.
If that question comes before us, and if Henderson is overruled, the parties could address the extent to which the doctrine of stare decisis applies to rectification of erroneous constructions of the Constitution.[4] The parties could also address the proper method for implementing any decision overruling Henderson. Would such a ruling reinstate the cap statute? If so, several other questions could then arise. Should any such decision apply prospectively only or should it apply to pending actions? If a decision overruling Henderson applies to pending actions that have not been tried, should the plaintiff be allowed the opportunity to amend his complaint to develop exceptions to the cap? As to cases that have been tried, where the record does not support the applicability of an exception, should further proceedings be allowed that could lead to a new trial if the plaintiff develops sufficient evidence to support the applicability of an exception?
Whether this and other special writings in this case will later be viewed as "the handwriting on the wall" remains to be seen. In any event, the interesting questions suggested here must await another day.
BROWN, Justice (concurring specially).
I agree that this case presents a close question as to whether the issue regarding the constitutionality of § 6-11-21, Ala. *400 Code 1975, was properly preserved for review, but I conclude that it was not. This Court should not revisit Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993), unless it is convinced that the appellant properly preserved that issue by obtaining an adverse ruling from the trial court. See Cooley v. Knapp, 607 So.2d 146, 148 (Ala.1992), cert. denied sub nom. Cooley v. Brown, 507 U.S. 992, 113 S.Ct. 1601, 123 L.Ed.2d 163 (1993); Alabama Power Co. v. Turner, 575 So.2d 551, 553 (Ala.), cert. denied, 500 U.S. 953, 111 S.Ct. 2260, 114 L.Ed.2d 713 (1991).

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
HOOPER, C.J., and COOK, SEE, LYONS, BROWN, and JOHNSTONE, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
LYONS, Justice (concurring).
I concur to overrule the application for rehearing. At the risk of being labeled a slave to procedural niceties, I adhere to the view that faithful adherence to the commands of procedural rules has a purifying effect upon the process by which we make often momentous substantive determinations.
The requirement that one seeking to overrule adverse precedent obtain an adverse ruling from the trial court does not require a litigant to do a "vain thing." In his dissent, Justice Houston cites several cases in which the Court said it was not necessary for a party to perform a vain or useless act. None of those cases excuses a party from the ordinary rule that a party must make a record in the trial court in order to assert error on appeal. Moreover, Justice Houston's argument overlooks the fact that these defendants had available Rule 5, Ala. R.App. P., under which, in a proper case, a trial court considering a motion could make a ruling adverse to a party, yet consistent with precedent and, at the same time, find that an interlocutory appeal "would materially advance the ultimate termination of the litigation," because "there is substantial basis for difference of opinion," given subsequent decisions. See, e.g., Professional Ins. Corp. v. Sutherland, 700 So.2d 347 (Ala.1997) (trial court relied on precedent in its holding, yet gave the statement required by Rule 5, Ala. R.App. P., for an interlocutory appeal; this Court gave permission to appeal, and on that appeal adopted a new rule of law). Furthermore, requiring a party to make a record in the trial court, even in the face of settled precedent, forces a party to seek a timely ruling so as to avoid a waiver. Requiring timely action thereby assists the appellate court in identifying the appropriate stage for applying the new rule in further proceedings after remand. Finally, it is anomalous to reverse a trial court's order on a ground the trial court was never asked to consider.
In their answer, both Goodyear and Brock asserted that the statutory damages cap was applicable to this case. However, merely reciting a defense in an answer does not create a record that can be reviewed on appeal, because a matter stated in an answer does not require a ruling by the trial court. See Violette v. Smith & Nephew Dyonics, Inc., 62 F.3d 8, 11 (1st Cir.1995), cert. denied, 517 U.S. 1167, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996) ("Merely mentioning an issue in a pleading is insufficient to carry a party's burden actually to present a claim or defense to the district court before arguing the matter on appeal."). Only when a party seeks by motion in the proceeding to apply a defense raised in an answer will that party get a ruling that can be reviewed on appeal.
The dissent relies on Wallace v. Doege, 484 So.2d 404, 405 (Ala.1986), as authority for the proposition that a limitations defense can be reviewed on appeal merely because it was stated in the answer. That case expressly refers to the trial court's *401 refusal to hear the limitations defense when it was presented at the close of all the evidence. In Ex parte State Dep't of Revenue, 595 So.2d 472 (Ala.1991), also relied upon in the dissent, the trial court declined to address a constitutional issue. The record in the present case simply does not support a conclusion that the trial court refused to apply the cap statute. Farm Country Homes, Inc. v. Rigsby, 404 So.2d 573 (Ala.1981), the final case relied upon by the dissent in this context, speaks to the necessity that a defendant raise the limitations defense in a pleading. To infer from that case that merely raising the issue by answer is sufficient to preserve error for appeal, a point that could not have been at issue in Rigsby, where the pleadings made no reference at all to limitations, would require too great a leap for me.
Goodyear and Brock unquestionably moved for a remittitur. Thus, we are not here presented with an issue regarding the necessity that a party object and state grounds in support of the objection.[1] Rule 7(b)(1), Ala. R. Civ. P., requires that a motion state the grounds on which the motion is based and state them "with particularity." How "particular" must one be when the trial court is bound by precedent? The only caselaw from this Court that I have found touching upon the necessity for an objection and a statement of the grounds therefor, in the context of an adverse precedent, is Ex parte Beavers, 598 So.2d 1320 (Ala.1992), where this Court, dealing with a defendant's right to claim the benefit of precedent in the form of an opinion of the United States Supreme Court in an unrelated case, held that the defendant was not excused from preserving error in the trial court. In dictum, the Court suggested that the announcement of a "new rule" in an unrelated action might excuse the defendant from the burden of objecting, citing United States v. Scott, 425 F.2d 55, 57-58 (9th Cir.1970), after remand, 446 F.2d 509 (9th Cir.1971). Scott, however, has subsequently been overruled in United States v. Keys, 133 F.3d 1282 (9th Cir.), opinion amended on rehearing, 143 F.3d 479 (9th Cir.), second amendment, 153 F.3d 925 (9th Cir.), cert. denied, 525 U.S. 891, 119 S.Ct. 211, 142 L.Ed.2d 173 (1998), because the creation of such an exception was deemed inconsistent with a federal rule of criminal procedure requiring an objection to a jury instruction.
The dissent refers to the defendants' raising the defense in a motion for a judgment as a matter of law and in objections to jury instructions. Because § 6-11-23 condemns any reference to the cap in the presence of the jury, at pain of mistrial, a preverdict motion for a judgment as a matter of law, made at the close of the evidence and based on the cap statute, if granted, or the court's giving an instruction that applied the cap, would have put the trial court in error for disclosing to the jury that it could not return a verdict in excess of the cap. How can we reverse the trial court's judgment on the basis of its correctly denying the motion for a judgment as a matter of law or correctly overruling objections to instructions?
Goodyear and Brock did not mention the cap statute in their motions for remittitur. We must look to the defendants'"Memorandum of Law and Submission of Authorities in Support of Defendants' Post-Judgment Motions" for grounds that relate to the cap statute. Other papers can be considered in determining grounds for a motion. Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin, 957 F.2d 515, 517 (7th Cir.), cert. denied, 506 U.S. 829, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992). However, the defendants' treatment of the cap in their memorandum can fairly be described as a request that the court view the statutory limit of $250,000 as directory and not mandatory. The thrust of the memorandum is that the cap may not technically be applicable, by reason *402 of Henderson, yet the defendants urge that the wisdom of the Legislature in setting a limit of $250,000 is informative to the trial court as it engages in the process of arriving at an appropriate reduction in punitive damages pursuant to the guidelines established in cases from this Court, such as Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), authorizing a trial court to order a remittitur. Compare the mandatory characterization of the impact of the cap in the defenses contained in the answers of both Goodyear and Brock. Paragraphs 14 and 15 of Goodyear's answer state:
"14. This defendant specially pleads the limitations set forth in Section 6-11-21 of the Alabama Code.

"15. This defendant pleads the $250,000 cap and avers that the abolishment of the cap by the Alabama Supreme Court was unconstitutional and without effect."
Paragraphs 18 and 19 of Brock's answer are identical to paragraphs 14 and 15 of Goodyear's answer. These statements are insufficient for the purposes for which the defendants now seek to use them, because they do not insist upon the cap as a limit but rather invoke it as a mere guideline from the legislature.
I am not persuaded that the ground stated in the defendants' motions, when read in connection with their memorandum, satisfies the requirements of Rule 7(b)(1). Nor do I favor resorting to the rule of construction stated in Rule 1, Ala. R. Civ. P.that the rules should be construed to assure "the just ... determination of every action"as a basis for disregarding the appellants' noncompliance with our procedural rules.
The appellants attempt to charge this Court with violating their right to due process by developing a novel rule of procedural default and applying it to them for the first time, and without notice. That charge has no merit. I therefore concur to overrule the application for rehearing.
JOHNSTONE, Justice (concurring).
I concur with the denial of the defendants' application for rehearing. In the application, as well as in the appeal itself, the defendants are urging us to hold the trial court in error for not applying § 6-11-21, Ala.Code 1975, to cap punitive damages at $250,000. The defendants, however, did not put the trial court in error by insisting, post-verdict as manifestly contemplated by § 6-11-21 and § 6-11-22, that the trial court apply the cap as such.
Section 6-11-21 reads:
"An award of punitive damages shall not exceed $250,000, unless it is based upon one or more of the following:
"(1) A pattern or practice of intentional wrongful conduct, even though the damage or injury was inflicted only on the plaintiff; or,
"(2) Conduct involving actual malice other than fraud or bad faith not a part of a pattern or practice; or
"(3) Libel, slander, or defamation."
Section 6-11-22 provides:
"Argument or mention, in the presence of the jury, of the classifications or limitations established in Section 6-11-21 is not permissible and shall be ground for a mistrial."
The defendants' post-verdict brief to the trial court states, in pertinent part,
"This [trial] Court is bound by Henderson [v. Alabama Power Co., 627 So.2d 878 (Ala.1993), which held § 6-11-21 unconstitutional]. Defendants reserve the right, however, to ask the Alabama Supreme Court to overrule that decision and apply the statutory cap in this case."
Error and appeal do not work that way. The defendants' words, "this Court is bound by Henderson," mean the defendants did not insist that the trial court apply the cap contrary to Henderson. Therefore, the trial judge's decision not to apply the cap was precisely what the defendants told him the law required of him *403 and thus was not an adverse ruling by the trial court that could be appealed as an error.
This Court cannot hold the trial court in error absent an adverse ruling constituting error. Chesser v. Mid-South Electrics, Inc., 652 So.2d 240 (Ala.1994). Because we find no prejudicial error argued by the defendants on this issue or any other, the trial court judgment was properly affirmed and the defendants' application for rehearing is properly denied.
HOUSTON, Justice (dissenting).
In their brief on application for rehearing, Goodyear and Brock, the appellants, correctly argue that we have denied them procedural due process by requiring that they have asked the trial judge to do something that he did not have, and never would have, the power to do: overrule a decision of this Court. Such a requirement violates what has been a long-standing maxim in this state's jurisprudence, that "Alabama law does not require the performance of a vain or useless act." Mutual Assur., Inc. v. Wilson, 716 So.2d 1160, 1165 (Ala.1998). See also Ex parte Industrial Distrib. Servs. Warehouse, Inc., 709 So.2d 16 (Ala.1997); Richards v. Henderson, 589 So.2d 709 (Ala.1991); Owens v. National Sec. of Alabama, Inc., 454 So.2d 1387 (Ala.1984); Goldman v. Jameson, 290 Ala. 160, 275 So.2d 108 (1973); Rayborn v. Housing Auth. of Washington County, 276 Ala. 498, 164 So.2d 494 (1964); American Life Ins. Co. v. Powell, 262 Ala. 560, 80 So.2d 487 (Ala.1954); Saenger Theatres Corp. v. McDermott, 239 Ala. 629, 196 So. 265 (1940); Perrine v. Southern Bitulithic Co., 190 Ala. 96, 66 So. 705 (1914); Mack v. De Bardelaben Coal & Iron Co., 90 Ala. 396, 8 So. 150 (1890).
Because this Court has consistently rejected any requirement that someone perform a pointless ceremony, if we now surprise the appellants with such a requirement we deny them due process. Indeed, the appellants were well aware of at least two things: 1) that the trial court was bound by Henderson and had no authority to overrule it; and 2) that we would not, according to this Court's unwavering and unqualified stance, as evidenced above, require them to go through the senseless ritual of asking the trial judge to overrule a decision of this Court. As the appellants point out, if they had had any suspicion that this Court would hold as it did, then they would have taken the 30 seconds or so that would be required to walk up to the trial judge and say "Your Honor, we ask this Court to overrule Henderson." However, the appellants had no reason to think that they had to ask that of the trial judge (there is no Alabama authorityor authority from any other state, for that matterthat would impose such a requirement) and they had every reason (based on our own holdings) to think that they did not have to perform such a vain act.
In fact, not only does our caselaw state that no pointless act will be required, but many cases cited by the appellants seem to say that raising the issue as they did in the trial court was sufficient to preserve it for appeal, even without an explicit adverse ruling. For example, in Wallace v. Doege, 484 So.2d 404 (Ala.1986), a decision with four Justices concurring and one Justice concurring in the result, this Court rejected an argument that a defendant could not raise a statute-of-limitations defense on appeal because there was no ruling by the trial court on that issue. The Court stated:
"[T]he statute of limitations was raised as an affirmative defense in the pleadings and was presented to the trial court at the close of all the evidence, but the trial court refused to hear it at that time. Since the statute of limitations was put into issue in the pleadings, it may be considered on appeal."

484 So.2d at 405. (Emphasis added.) See also Ex parte State Dep't of Revenue, 595 So.2d 472, 474 (Ala.1991) (stating that "[b]ased on our review of the record, we *404 find that the constitutionality of § 6-5-605 was at issue below, although the trial court declined to address it"); Farm Country Homes, Inc. v. Rigsby, 404 So.2d 573, 576 (Ala.1981) (implying that if a statute-of-limitations defense is put into the pleadings, it is preserved for appeal).
With this in mind, the appellants demonstrated advocacy that can only be described as exhaustive. For example, in Goodyear's amended answer and in Brock's answer, both of which were filed less than two months after this action was filed, the following items appear:
In Goodyear's answer:
"14. This defendant specially pleads the limitations set forth in Section 6-11-21 of the Alabama Code.

"15. This defendant pleads the $250,000 cap and avers that the abolishment of the cap by the Alabama Supreme Court was unconstitutional and without effect.
"16. This defendant avers that the Alabama Supreme Court cannot abolish the $250,000 cap for punitive damages established by the legislature and the attempt to abolish the cap violates the Constitutions of the United States and the State of Alabama."
In Brock's answer:
"18. This defendant specially pleads the limitations set forth in Section 6-11-21 of the Alabama Code.

"19. This defendant pleads the $250,000 cap and avers that the abolishment of the cap by the Alabama Supreme Court was unconstitutional and without effect.
"20. This defendant avers that the Alabama Supreme Court cannot abolish the $250,000 cap for punitive damages established by the legislature and the attempt to abolish [it] violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution."
The appellants raised these defenses again 1) in their motions for judgment as a matter of law made at the close of the plaintiff's case and again at the close of all the evidence; 2) in arguing their objections to the trial court's charges to the jury; and 3) in their motion for a remittitur. As the appellants ask, what more could they have done? In answering that question, we should remember Alabama Code 1975, § 6-11-22, which provides:
"Argument or mention, in the presence of the jury, of the classification or limitations established in Section 6-11-21 is not permissible and shall be grounds for a mistrial."
Clearly, any attempt to reinstate the $250,000 limitation on punitive damages should not have been made in the presence of the jury or in an instruction to the jury.
Given § 6-11-22 and the lack of any notice of a requirement that they ask the trial court to overrule Henderson, I must conclude that the appellants did everything they could possibly do to preserve this issue for an appeal. That this was the appellants' understanding is made apparent from the brief filed in the trial court in support of the appellants' motion for a remittitur:
"Finally, although it bears mention that although the $250,000.00 statutory cap on punitive damages provided in [Ala.Code 1975, § 6-11-21,] was held unconstitutional by a divided court in Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993), as impairing the traditional function of the jury, that does not render irrelevant the legislature's determination that in this type of case, $250,000.00 is the maximum reasonable amount. See, Sperau v. Ford Motor Co., 674 So.2d 24, 44 (Ala.1995) (Houston, J., dissenting) (`This Court, in its exercise of supervisory appellate jurisdiction over jury verdicts; is bound by the Fourteenth Amendment and Article VI (the Supremacy Clause) of the United States Constitution to conduct a "meaningful" review of jury verdicts awarding punitive damages. This Court *405 simply cannot fulfill this constitutionally mandated responsibility without recognizing that the legislature, exercising its policy-making power, has determined that $250,000 is the maximum reasonable amount of punitive damages that should be awarded in fraud cases like this one.').6
6 "This court is bound by Henderson. Defendants reserve the right, however, to ask the Alabama Supreme Court to overrule that decision and apply the statutory cap in this case."
In other words, knowing that they had done all they knew to do in the trial court (with the understanding that only the Alabama Supreme Court, not the trial court, could overrule Henderson), the appellants did the last thing available to try to have the punitive-damages award reduced they used the $250,000 cap as evidence of a reasonable standard for the trial judge to consider when deciding the issue of remittitur. The trial judge refused to reduce the punitive-damages award to $250,000.
However, our summary affirmance and the special writings addressed to that affirmance suggest that the appellants should have asked the trial court to overrule Henderson. Such a requirement is found nowhere in our caselaw and is directly at odds with a fact of which the parties were on notice: that we will never require a party to perform a vain or useless act. This requirement also runs afoul of the purpose of the rule that only issues called to the trial court's attention can be heard on appeal; that purpose is to allow the trial judge the first opportunity to correct any mistake. See Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990); Moody v. State ex rel. Payne, 295 Ala. 299, 306, 329 So.2d 73, 78 (Ala.1976).
In this case, there could be no error for the trial judge to correct, because there was never a question as to whether the trial judge could overrule a Supreme Court decision. Knowing that there was no error concerning the Henderson decision that the trial court could correct, the appellants put the trial court on notice that if the court refused to reduce the punitive damages to $250,000 then the appellants would seek to have Henderson overruled by the only court that could overrule it the Alabama Supreme Court.
The affirmance in this case and today's action denying rehearing run contrary to the United States Supreme Court's understanding of procedural due process. A good example of that Court's understanding is found in NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The NAACP case was summarized quite well in another relevant procedural-due-process case, Reich v. Collins, 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994):
"In many ways, then, this case [Reich] bears a remarkable resemblance to NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (Harlan, J.). There, an Alabama trial court held the National Association for the Advancement of Colored People in contempt for failing to comply with a discovery order to produce its membership lists, and the Alabama Supreme Court denied review of the constitutionality of the contempt judgment on the grounds that the organization failed earlier to pursue a mandamus action to quash the underlying discovery order. The Court found that the Alabama high court's refusal to review the contempt judgment was in error. Prior Alabama law, the Court said, showed `unambiguous[ly]' that judicial, review of contempt judgments had consistently been available, the existence of mandamus notwithstanding. Id., at 456. For good measure, the Court also looked at prior Alabama law on mandamus and found nothing `suggest[ing] that mandamus is the exclusive remedy' in this situation. Id., at 457 (emphasis [on the word `exclusive'] in original). Justice Harlan thus concluded: `Novelty in procedural requirements cannot be permitted to thwart *406 review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights.' Id., at 457-458, citing Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930) (due process violated when state court denied injunction against collection of unlawful taxes on the basis of taxpayer's failure to pursue administrative remedies, where State's prior `settled' law made clear that no such administrative remedies existed); see generally Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L.Rev. 1128, 1137-1139 (1986)."
513 U.S. at 112-13. (Emphasis added, except as indicated.)
Cases like those mentioned above make it clear that a court cannot, consistent with the notion of procedural due process, deny one the right to be heard, based on a procedural requirement that could not and should not have been foreseen. To do so would, as the appellants point out, turn the right to be heard into "a sham or a pretense." Palko v. Connecticut, 302 U.S. 319, 327, 58 S.Ct. 149, 82 L.Ed. 288 (1937).
The appellants got an adverse ruling on the only motion they could legitimately file under Alabama law regarding the reduction of the punitive-damages award to $250,000. Our failure to reach this issue based on this record denies the appellants procedural due process; therefore, I would grant the rehearing.
MADDOX, J., concurs.
NOTES
[1] "British statutes antedating the Declaration of Independence have almost universally been regarded as having the effect of judicial precedent, rather than legislative enactment. `The common law of the mother country as modified by positive enactments, together with the statute laws which are in force at the time of the emigration of the colonists, becomes in fact the common law rather than the common and statute law of the colony.'"
[2] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[3] Compare Oliver v. Towns, 738 So.2d 798, at 805 (Ala.1999) (Lyons, J., concurring in part and concurring in the result in part) ("However, because [the defendant] did not ask this Court to revisit Henderson v. Alabama Power Co.,.... I would confine any reference to § 6-11-21 to an observation that, on remand, the trial court should consider whether the statute has a constitutionally permissible field of operation in this nonjury case.") (Citation omitted.)
[4] See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 42 n. 10 (Ala.1998) (Lyons, J., concurring specially and quoting from Justice Black's dissenting opinion in Gwin, White & Prince v. Henneford, 305 U.S. 434, 454-55, 59 S.Ct. 325, 83 L.Ed. 272 (1939), in which he stated, "[T]he rule of stare decisis cannot confer powers upon the courts which the inexorable command of the Constitution says they shall not have.").
[1] See Rule 46, Ala. R. Civ. P.